# CHARLESTON

FREUDENBERGER OIL CO. v. SIMMONS *et als.*

Submitted November 17, 1914.   Decided December 15, 1914.

1. DEEDS—*Construction—Validity.*  ·
   An exception of severable matter, expressed in sufficient terms and placed immediately after the habendum in a deed, is not repugnant, in the legal sense of the term, to the granting clause, and is valid. (p. 342).

2. SAME—*Construction—Reddendum—Function.*
   The function or office of the reddendum in a deed is primary and it is equal, in dignity and virtue, to the premises. To ascertain the intent of the grantor and the effect of the deed, both must be read together and permitted to operate. (p. 341).

3. SAME—*Exception—Validity.*
   The space or position in a deed usually accorded to the reddendum may be used for a clause excepting a severable thing from the premises or granting clause of the deed, and an exception so made is not repugnant to the grant, unless it is in irreconcilable conflict therewith. (p. 341).

4. SAME—*Construction—Exception.*

An exception eliminates from the operation of the terms of the granting clause so much of what would otherwise pass by them as is embraced in the terms of the exception, and the deed, as a whole, passes what is embraced in the terms of the grant less what is included in the exception.   (p. 341).

5. SAME—*Exception of Minerals—Validity.*

An expection of the minerals in a tract of land, granted in general terms, by the premises of the deed, made by a clause in space usually occupied by the reddendum, is valid.   (p. 343).

6. MINES AND MINERALS—*Exception of Minerals in Deed—Construction.*

The following terms in such a deed:   ''Excepting therein all coal or other minerals or mineral waters which are to be held in common by all the heirs'' of the grantor, sufficiently manifest intent to except the minerals in the land from the operation of the deed.   (p. 343).

7. DEEDS—''*Exception.*''

A reservation in a deed of proper subject matter of an exception is, in law, an exception, though incapable of operation as a reservation, since it expresses unequivocal intent not to part with the thing reserved.   (p. 343).

8. SAME—*Exception—Construction—Validity.*

An abortive attempt, in a deed in which an exception is made, to grant the subject matter of the exception, neither negatives the intent to except nor invalidates the exception.   (p. 344).

9. SAME—*Operative Words—Necessity.*

Operative words manifesting intent to transfer the property are absolutely essential to the conveyance of title.   The intent must be disclosed by the words of the deed not the mere acts of the parties.   (p. 244).

Appeal from Circuit Court, Kanawha County.

Suit by the Freudenberger Oil Company and others against E. A. Simmons and others.   From decree for defendants, plaintiffs appeal.

*Reversed and Cause Remanded.*

*S. B. Avis, Mollohan, McClintic & Mathews, Linn & Byrne, Elmer L. Stone, A. A. Lilly,* Attorney General, *Rankin Wiley, L. E. McWhorter* and *Hogg & Hogg,* for appellants.

*Littlepage & Littlepage, Clyde B. Johnson, W. W. Wertz* and *C. J. Van Fleet,* for appellees.

POFFENBARGER, JUDGE:

Though large interests and numerous conflicting claimants thereof are involved in this cause, the questions developed in it, thus far, are legal in character and few in number. The only one argued on this appeal is the construction of six similar deeds, each of which contains a clause which is relied upon as having excepted from the operation thereof, the minerals in the land granted. The claimants of large royalty interests, produced by operations on the lands under oil and gas leases, divided into two general classes, those claiming under the deeds and denying the validity of the exception and those claiming title as heirs of the grantor, upon the theory of retention of the title to the oil and gas by the grantor, under and by virtue of the clause in question. In view of these conflicting claims, the Freudenberger Oil Company, holding by assignments, numerous leases on the property, some of which were executed by claimants of the one class and some by claimants of the other, filed its bill in equity to require them to litigate their conflicting claims and have their rights judicially determined, to the end that it may safely pay and deliver the royalties. On this bill, receivers were appointed and some of the defendants demurerd to it and answered. Some of the parties claiming as heirs joined the oil company as plaintiffs in an amended bill. Being of the opinion that the clauses in question were attempted reservations in favor of persons not parties to the deeds and, therefore, void, the court held that the formal grantees in the deeds took title to the oil and gas and dismissed the bills as to all persons claiming as heirs of the grantor.

By the deeds out of which the controversies arise, the grantor, having previously caused his lands, embracing 1121½ acres, to be surveyed and divided into six lots, on the 10th day of October, 1850, conveyed Lot No. 1, containing 202 acres, to Charles Cavender, a son-in-law; Lot No. 3, containing 204 acres, to Owen G. Jarrett, a son; Lot No. 4, containing 200 acres, to Squire G. Jarrett, another son; and Lot No. 2, containing 150 acres, to Woods and Sinnett in trust for the sole and separate use and benefit of Mary Swarr, a daughter. On the 26th day of March, 1855, he conveyed

73½ acres, part of Lot No. 5, to Benjamin Slack, a son-in-law, and 64½ acres, the residue of said lot to Susan Philips, a daughter. What became of Lot No. 6 is not disclosed by the record.

In each of five of these deeds, appears a provision of which the following is a fair sample: "Excepting therein all coal and other minerals or mineral waters to be held in common by the heirs of the said parties of the first part, granting therein to each and all equal rights and privileges to mine and enjoy said minerals and to make roads which may be necessary for the transportation of such coal or minerals." In the deed to Squire G. Jarrett the grantors reserved to themselves a life estate in the land and then, as to the minerals, used these terms: "and the said parties of the first part further reserve all coal or other minerals or mineral waters to be held in common, by all their heirs granting to each and to every equal rights and privileges to mine and enjoy the same." This clause differs from the others only in the use of the word "reserve" instead of the word "excepting."

In the premises of each of the deeds, there is a complete and formal grant of the land in fee simple. The land is conveyed to a designated person, his heirs and assigns. Then follows the habendum; to have and to hold the land, with the appurtenances, to him, the grantee, his heirs and assigns forever. Between this and the warranty clause and, in some instances, in the same paragraph, is found the clause giving rise to the conflicting claims.

The argument found in the opinion of the court below and the brief of counsel for the appellees proceeds mainly upon three theories of invalidity, repugnancy between this clause and the formal granting portion of the deed, legal impossibility of a reservation, in a deed, of something to a stranger thereto, and fatal uncertainty as to the beneficiaries of the reservation or exception, if it could be treated as an attempted grant. In view of its invocation, in some instances, of highly technical rules, applicable to the offices and functions of formal parts of deeds, as defined and recognized in law, assignment or reference of the clause in question to its proper class as a part of the deed will at once determine the degree

of weight, if any, to which the argument and the authorities relied upon are entitled.

Obviously it is a reddendum clause, and constitutes no part of the habendum. In feudal times, the reddendum was employed to set forth the return to the grantor, generally military services to be rendered to him by the grantee. Since the abolition of feudal tenures, it reserves annual or periodical rent as a compensation or return for the property granted. 2 Min. Ins. 630. It is also used to effect a reservation of an estate in the land previously granted, as, for instance, a life estate. *Id.* 630; Devlin Deeds, 3rd Ed. 221; *McDougal* v. *Musgrave,* 46 W. Va. 509. Its detraction or abatement from the grant made by the premises is not regarded as repugnance. Both clauses are deemed to be of equal dignity and are read together and allowed effect and operation, the latter limiting and modifying the former so as to effectuate the intent of the grantor as disclosed by the whole instrument.

The habendum has an entirely different office. In logic and purpose it is a continuation of the premises, or rather a definition thereof, and, being so, its terms are subsidiary to those of the premises and must, therefore, yield to them, in case of repugnance or irreconciliable conflict. ''The office of the habendum is to determine what estate or interest is granted by the deed; although this may be, and generally is, stated in the premises. In which case the habendum may lessen. enlarge, explain, or qualify, but not totally contradict, or be repugnant to the estate granted in the premises. In case of such irreconciliable repugnancy, the premises generally prevail, for the habendum cannot divest an estate already vested by the premises.'' 2 Min. Inst. 629; 2 Lomax Dig. 215. An instance of enlargement by the habendum is this: If no grantee is named in the premises, the habendum may supply the name by way of definition of the general intent to grant, expressed in the premises, but the grant is made by the premises, and the grantee is deemed in law to take by virtue of the premises, not the habendum. The following is an instance of reduction or limitation: If the grant is in general terms, not saying whether the estate is given in fee, for life or for years, and the habendum says, in express terms, the grantee is to have and to hold for a term of years, only

an estate for years passes. In both cases, and in all such
cases, the premises alone effect the grant. The habendum
can add nothing that is outside of, or beyond, the terms used
in the premises. Nor can it take away anything specifically
conferred by the granting clause. Thus, if lands are given,
in the premises of a deed, to A. and his heirs, habendum to
A. for life, the habendum is void, because it contradicts ex-
press terms of the premises, and so goes beyond the work or
function of mere definition of those terms. It is not per-
mitted to control, but, on the contrary, is made to yield, in
case of irreconciliable conflict, because its legally prescribed
office is to define and explain not to grant, and when the
courts come to it, in the construction of a deed, they set up
the legal presumption that it was employed by the draftsman
only to perform that legal function.

But no such presumption arises upon the interpretation of
the reddendum, or any terms found in the premises.
Anciently, exceptions seem to have been inserted in the prem-
ises, just before the habendum. Lomax says, 2 Dig. 214,
"The next clause in the premises of a deed is that, whereby
the grantor excepts something out of that which he has before
granted, by which means it does not pass by the grant, and
is severed from the thing granted." According to this defi-
nition, it is immaterial that the grant preceded the exception
and is full and complete. The intent arises out of both,
because they are of equal dignity. Only so much of the grant
is effective as is not eliminated by the exception. There is
no legal repugnancy, because, in the large sense, both clauses
perform the same function, namely, expression of primary
intent. The habendum is subordinated, in cases of conflict,
because its legal office is secondary and it is presumed to have
been used only for its secondary purpose. Nor does the red-
dendum stand on the low plane of the habendum, for its
office is the expression of primary intent. It does not define.
It creates and defines, wherefore it is equal in dignity and
virtue with the premises.

It follows logically that, upon strict construction under
technical rules, a good exception or reservation may be made
in a clause of a deed immediately following the habendum,

and this conclusion is sanctioned by high authority; 5 Am. & Eng. Ency. Law, pp. 455 and 457; 13 Cyc. 552; *McDougal* v *Musgrave,* cited. The first of the two text-books here cited says the reddendum follows the habendum and refers to a preceding section for the matter usually inserted in it. The other says reservations are made in the reddendum and puts it next in order to the habendum. In the same connection, and evidently as part of the clause whether, strictly speaking, reddendum matter or not, it places conditions, all of which are primary—operative—provisions, like the premises. Even in feudal times, its function was not secondary. Though subsequent in order to the grant, its terms were creative, not merely definitive. Bouvier's Law Dict.; 2 Bla. Com. 299; Co. Litt. 47; Shepp. Touchst. 80. That, in modern times, it is used to accomplish purposes different from those it effected in feudal days, and larger, does not change its character. Hence, its use to effect reservations of estates for life or years and exceptions from the grant, is wholly unobjectionable and not violative of any principle or rule of law.

Whether abolition, in whole or in part, of the old doctrine of the habendum, is to fall under the modern rule of construction, declared in *Uhl* v. *Railroad Company,* 51 W. Va. 106 and the numerous cases cited in Devlin on Deeds, 3rd Ed. sec. 844a, need not be determined. However, it seems to have been modified in one state as early as 1844. *Sanborn* v. *Eliphalet,* 24 Me. 118, in which an exception of buildings, found only in the habendum, was held valid and effective, but there the exception of the buildings was conceded.

The terms of the clauses quoted from the deeds here involved, except in one instance, place the intent to except the minerals beyond the range of doubt. They are express and positive. The deed in which the terms used import reservation instead of exception differs from the others in form only. It is well settled that a good reservation will be treated as an exception, if it cannot operate as a reservation, *Stone* v. *Stone,* 18 Am. Eng. Ann. cases, 800 & note.

But the rules of construction place some limitations upon exceptions. They must not be repugnant, but the repugnancy which condemns them, in some instances, is clearly defined. The subject matter must be severable and be only a

part of the thing granted, and a particular thing out of a general one, not a particular thing out of a particular one. This is illustrated by the opinion of Parker, C. J. in *Sprague* v. *Snow*, 4 Pick. (Mass.) 54, as follows: "If there is an explicit and unambiguous grant of a thing, any exception or reservation which is manifestly contradictory is to be rejected; as if a man convey twenty acres, excepting one acre. But. if a farm or tract of land is conveyed in general terms, an exception of any number of acres, or any particular lot, is not repugnant, but will be valid." To the same effect, see also *Cutler* v. *Tufts*, 3 Pick. (Mass.) 272. Logically the grant of a single inseparable thing and an exception or reservation of the same thing would be a square contradiction and create an irreconcilable repugnancy. Hence, the exception would have to be held void in order to give the deed any effect. So if a number of single things, such as acres, be granted, an exception of one of them would necessarily be void, for the same reason. But, if one separable thing be granted in general terms and a separable portion of it be excepted there is no such absolute conflict and the exception may stand along with the grant and limit it, though contradictory of it in a general sense. Possibly the principle does not differ essentially from that applied in the construction of the habendum. They are much the same, if the habendum is regarded as pertaining only to the estate granted and not at all to the subject matter thereof, and the reddendum or exception or reservation in what ever form, to the subject matter and not at all to the estate. Likely they are to be so regarded, but that question is left open.

Here the terms of the deeds, as to the tangible subject matter, the land, are general. They do not mention the minerals specifically. The minerals are severable portions of the thing generally granted. Hence, they are proper subjcts of exception, and parts of the thing generally granted, not of some other thing, foreign to the transaction. They are not all that was granted. They are such things as the grantor could retain. They have all the legally essential elements of a good exception, and were cut out of the operation of the deeds by apt words.

Whether the word "heirs" used in the exceptions can be

taken to mean children need not be determined. No words sufficiently manifesting intent to grant the excepted minerals were used. The word "granting" applies only to the mining privileges and enjoyment. As to the minerals themselves, no such word is used. They are excepted and then the deed says there are "to be held in common by all the heirs." These are not operative words. The most that can be said of them is that they treat the title to the minerals as being already in the heirs. Words of grant, in some form, are absolutely essential to the passing of an estate by deed. They need not be technical, but they must express intent to transfer the property. The declaration by the grantor, in a deed, that he makes a quit claim deed to the grantee, accompanied by a minute description of the land, is not enough. *Weinrich* v. *Wolf,* 24 W. Va. 299. Even though a deed name the grantor and grantee, recite the consideration and describe the land and is duly executed and delivered by the grantor, and a statute of the state provides that any instrument in writing signed by the grantor is effectual to transfer the legal title, if such was the intention of the grantor, to be collected from the entire instrument, it passes no title. *Davis* v. *Davis,* 43 Ind. 561; *Hummelman* v. *Mounts,* 87 Ind. 178; *Bell* v. *Mc-Duffie,* 71 Ga. 264; *Webb* v. *Mullins,* 78 Ala. 111; *Brewton* v. *Watson,* 67 Ala. 121; Jones Real Prop. in Conv. secs. 311 to 315. Intention collectible from the acts and conduct of the party, only, does not suffice. The intent must be collectible from the words of the instrument.

Lack of disposition of the minerals, after having excepted them, or coincident with the exceptions, does not invalidate the exception. The exception and the abortive grant are separate and distinct acts. Hence, clearly the one may stand without the other. *Martin* v. *Cook.* 102 Mich. 260; *Richardson* v. *Palmer,* 38 N. H. 212; *Corning* v. *Troy Iron Co.,* 40 N. Y. 209; *Bridger* v. *Pierson,* 45 N. Y. 601; *West Point Iron Co.* v. *Reyment,* 45 N. Y. 703; *Stone* v. *Stone,* 18 Am. & Eng. Ann. Cases. 800. The case last cited is extensively and ably annotated. That the exception is in form a reservation made to a stranger to the deed is wholly immaterial as the cases here cited will show. It shows clear intent not to pass the land and is not repugnant, in a legal sense, to the granting clause.

Just here it is merely suggested that, if, in such case, the reservation were followed by words of grant to a third person, he might take the excepted land. A mere reservation to him does not perhaps sufficiently express intent to grant. If words of grant were used, they might make him a party, though he be not named formally as a party.

In conformity with the principles and conclusions here stated so much of the decree complained of as dismisses the bill and amended bill, as to all parties claiming title to interests in the oil and gas royalties and the minerals in the lands, as heirs of Squire Jarrett, the grantor in the deeds, will be reversed and said bills reinstated as to them, and a decree will be entered here adjudicating the title to the royalties in the bills and proceedings mentioned to be in the heirs of the said Squire Jarrett and directing payment of the same to them, so far as they have not parted with their interests therein, or in the minerals in place from which the same have accrued, or disposed of the same, and the cause will be remanded for further proceedings.

The decree entered here will give the Freudenberger Oil Company, plaintiff, its costs in the court below out of the fund in the hands of the receivers, and the parties claiming as heirs of Squire Jarrett their costs in the court below, including reimbursement for the amount of the costs decreed to the plaintiff, out of the funds; and costs in this court will be decreed to the formal appellants, other than the Freudenberger Oil Company, against all appellees that claim title by virtue of the deeds mentioned and described in the bill.

*Reversed and Cause Remanded.*