458 S.E.2d 327

Don PHILLIPS, Appellant,

v.

Steven FOX and Debra Fox, His Wife,
and Mabel Fox, Appellees.

Mabel FOX, Appellee,

v.

Don PHILLIPS, Appellant.

No. 22194.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 28, 1995.

Decided April 14, 1995.

658

David R. Rexroad and Steven B. Nanners, Rexroad & Rexroad, Buchannon, for appellant.

J. Thomas Lane and Charles B. Dollison, Bowles Rice McDavid Graff & Love, Charleston, for appellees.

McHUGH, Justice:

This is an appeal from the August 24, 1993 order of the Circuit Court of Randolph County prohibiting appellant, owner of a severed mineral estate, from conducting surface mining[1] activities on appellees' surface estate absent an express right to do so.[2] This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated

---

1. The terms "surface mining" and "strip mining" refer to the same method of mining and are used interchangeably.

2. The circuit court also denied appellant's motion to correct a "scrivener's error" in the deed which conveyed to him the minerals but "reserved" to him the right to mine.

below, the order of the circuit court is reversed and this case is remanded.

I

*Factual and Procedural Background*

The parties herein, appellant, Don Phillips, and appellees, Steven and Debra Fox and Mabel Fox, jointly stipulated and agreed to the following facts, all of which were adopted by the circuit court in its August 24, 1993 order:

By order of the Circuit Court of Randolph County, dated August 29, 1988, *Davis Elkins v. Paul Phillips, et al.* and *Davis Elkins v. Don Phillips, et al.*, Civil Action Numbers 88–C–98 and 88–C–192, respectively, were consolidated and suit was instituted for the partition of seven tracts of land located in Middle Fork District, Randolph County, West Virginia. The tracts were owned jointly by the parties to the consolidated suit. In its order of October 3, 1988, the circuit court determined "the seven tracts of land [to be] so varied in composition and [to] have such diverse fractional ownership interests that partition cannot be conveniently made[.]" It, accordingly, ordered "that a partition sale of the real estate ... shall be had without the appointment of commissioners to independently determine the susceptibility of the property for partition." [3] (footnote added).

The circuit court, by order of November 1, 1988, ordered the partition sale to take place on November 12, 1988 at the Randolph County Courthouse, Elkins, West Virginia. The circuit court entered no other orders concerning how the property was to be sold.

The subject real estate was advertised for sale in "The Inter–Mountain," a newspaper of general circulation in Randolph County, once a week for three successive weeks.[4] At the real estate sale, held on November 12, 1988, the special commissioners offered first the surface of each tract for sale and then the minerals underlying each tract. However, no definition was given either the word "surface" or "minerals" nor was mention made of any rights which were being sold with the minerals, particularly as such rights might affect the surface.

Appellees were the high bidders for the surface, offering the sum of $248,000, while appellant was the high bidder for the minerals, offering $13,500. Following the bidding, on November 18, 1988, the respective purchasers paid the amount of their bids, which were accepted by the special commissioners.

One of the special commissioners, Stephen Jory, prepared the deeds for the purchasers, at which time appellant requested that his deed include language giving him rights to mine the coal. The issue of mining rights was addressed but not resolved at a hearing held in conjunction with confirming the sale of the surface and minerals. The circuit court, at the December 19, 1988 hearing, deferred ruling upon the issue of mining rights, including whether surface mining would be permitted under the proposed deed. By order entered December 19, 1988, the circuit court confirmed the sales of both the surface and minerals and directed the special commissioners to deliver deeds to the respective purchasers.

Accordingly, the special commissioners conveyed the surface to appellee Mabel Fox and the underlying minerals to appellant, each by deed dated December 19, 1988. Both deeds contained the following reservation:

The Special Commissioner [sic] reserve, for the benefit of the purchaser of the minerals underlying the real estate herein conveyed, the perpetual rights, privilege and easement of entering onto the surface to prospect, explore, mine, extract, produce, store, procure, transport, market and dispose of any and all of the oil, gas, coal and other minerals by any method or ma-

---

3. *See W.Va.Code,* 37–4–3 [1957].

4. A copy of the advertisement was attached to the parties' stipulation of facts. It described the land as follows: *"SALE OF PHILLIPS LAND*[;]
Public sale of valuable real estate[;] 3 tracts aggregating approximately 550 Ac., including timber; additional small tract with house; several tracts of oil and gas and 1 of coal to be sold separately."

chinery now employed.[5]

(footnote added).

In addition to these stipulated facts, the record indicates that on or about April 23, 1991, appellant went onto the surface and attempted to drill test holes in the strata and overburden in order to determine the coal's feasibility for mining. Appellees resisted appellant's presence on their land and his attempt to drill holes in it and to commence surface mining operations.[6] Both the appellant and the appellees moved for temporary restraining orders, each against the other and, by order of May 6, 1991, following a hearing on the matter, the circuit court ordered the following: that the cases be consolidated; that appellant complete within two days the drilling of "test holes" to determine the feasibility of coal mining, without interference from appellees; that, upon completion of the drilling, all equipment used for testing be removed from the surface; that the surface be reclaimed; and that appellant refrain from conducting "any further prospecting or other acts associated with mining operations" until the rights of the respective parties are determined.

The parties subsequently sought a declaration from the circuit court[7] interpreting the two deeds and, particularly, the appellant's right to mine and extract the coal by the surface mining method. Following a hearing on the matter, the parties submitted the aforementioned stipulated facts and agreed that the court should decide the case based upon such stipulated facts, memoranda and pleadings. Accordingly, by order of Febru-

ary 10, 1993, the circuit court found that the "surface" conveyed to appellees "includes all of the land from the space overhead to the center of the earth except only for the oil, gas, coal and other similar minerals which can be mined and extracted without destruction of the surface[;]" that the "oil, gas, coal and other minerals" conveyed to appellant "includes all of the oil, gas, coal and other similar minerals which can be mined and extracted without destruction of the surface." The order further stated that "[o]wnership of the oil, gas, and coal and other similar minerals as described in the deed to [appellant] ... includes such rights to use the surface for the extraction of the oil, gas, coal, and other similar minerals as are reasonable and necessary, and such rights do not include the right to destroy any portion of the surface by surface mining, by removing support, or by any other mining method or operation which would destroy the surface."

On February 19, 1993, appellant filed a motion for reconsideration of the circuit court's February 10, 1993 order on the basis that said order "fails to provide for findings of fact and conclusions of law of the Court in order to determine the reason for the Court's ruling." At the hearing on appellant's motion for reconsideration, held on June 18, 1993, the circuit court reconsidered the parties' arguments on the merits of the case, and, for the first time, considered a motion that it should correct a "scrivener's error" in appellant's deed, changing the word "reserve" in the reservation clause to "grant." Also at the hearing, the parties agreed to

5. This reservation provision originally contained language permitting the purchaser of the underlying minerals, upon entering onto the surface, to extract them using any method or machinery now "or hereafter" employed. At the December 19, 1988 hearing, the circuit court deleted the words "or hereafter."

6. In an uncontroverted affidavit, appellee Steven Fox stated that he and his mother, appellee Mabel Fox, bid on the minerals at the partition sale, but did not attempt to outbid appellant based on the assumption that the minerals had little value and "that development of the minerals would not cause destruction of the timberlands which [appellees] had just purchased." Mr. Fox further stated that, when they purchased the surface, they did not contemplate that any portion of it

would be destroyed by surface mining. Finally, he stated that the surface estate, at the time the affidavit was taken, contained 1,650,000 board feet of timber valued at $173,230 and in the year 2009, the next year the timber is scheduled to be harvested, it will contain 3,850,000 board feet of timber to be valued at $869,588.

7. This case was decided pursuant to the Uniform Declaratory Judgments Act, *W.Va.Code,* 55–13–1 *et seq.,* even though neither the trial court nor the parties identified the action as such. *W.Va.Code,* 55–13–2 [1941] provides, in relevant part, that "[a]ny person interested under a deed ... may have determined any question of construction or validity arising under the instrument ... and obtain a declaration of rights, status or other legal relations thereunder."

submit to the circuit court a revised final order to supersede the previous one and to address additional matters raised at the hearing.

In its final order of August 24, 1993, the circuit court adopted and set forth the parties' stipulation of facts previously filed and made numerous conclusions of law including, *inter alia*, that based upon the facts and circumstances of the case, the respective deeds issued by the special commissioners "must be viewed as having conveyed the exact property which was sold at the sale, without the addition of rights or imposition of burdens not expressly made a part of the sale." [8] (footnote added). It is from this order that appellant now appeals.

## II

### Standard of Review

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review. *See* syl. pt. 1, *Burnside v. Burnside,* No. 22399, —— W.Va. ——, 460 S.E.2d 264 (Mar. 24, 1995).

When an action is tried upon the facts without a jury, the circuit court "shall find the facts specially and state separately its conclusions of law thereon ... [and these] [f]indings ... shall not be set aside unless clearly erroneous[.]" Fed.R.Civ.P. 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948). However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm "[i]f the [circuit] court's account of the evidence is plausible in light of the record viewed in its entirety[.]" *Anderson v. City of Bessemer City, North Carolina,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d

---

8. The circuit court further concluded that:

6. As a general rule, where title to the surface is severed from the title to the minerals, the right to mine the minerals by surface mining, or any other method which will destroy the surface, must be expressly conveyed in order to exist. *Brown v. Crozer Coal & Land Company* [144 W.Va. 296], 107 S.E.2d 777, 786 (1959); *West Virginia–Pittsburgh Coal Co. v. Strong* [129 W.Va. 832], 42 S.E.2d 46, 50 (1947).

7. Absent an express grant of surface mining rights, the owner of the surface is entitled to the protection of the surface in its natural state, and ownership of the surface is subject only to necessary and reasonable rights in the mineral owner to mine. *Buffalo Mining Co. v. Martin* [165 W.Va. 10], 267 S.E.2d 721 (1980); *Squires v. Lafferty* [95 W.Va. 307], 121 S.E. 90 (1924). Such rights do not include the right to destroy any substantial portion of the surface by surface mining or the employment of any other mining method which would destroy the surface or the integrity or support thereof.

8. The sale and resulting deed to [appellant] included such implied rights as are both reasonable and necessary to mine and extract the minerals; however, such rights do not include the right to destroy the surface by surface mining or the employment of any other mining method which would destroy the surface or the integrity or support thereof.

9. In addition to the foregoing, the deed to [appellant] did not convey any express mining rights for the reason that the deed failed to contain any operative words of transfer. A reservation of rights does not serve to convey rights and the word 'reserve' will not operate in place of the words 'grant' or 'convey.' *See Freudenberger Oil Company v. Simmons,* 75 W.Va. 337 [83 S.E. 995] (1914); *Chapman v. Carter,* 46 W.Va. 69 (1899).

10. A 'scrivener's error' in a deed involves a mutual mistake or error and a court has authority to change a mistake or error only in the event the mistake could be shown to be mutual. Thus, if both parties intended the [appellant's] deed to provide for a 'grant' of surface mining rights as opposed to use of the word 'reserve,' this Court might have authority to rewrite the deed as urged by [appellant]. The facts in this case clearly indicate that this was not the mutual intent of the parties, nor would it reflect the sale which actually took place.

. . . .

13. Under the facts of this case, [appellant] does not have the right to conduct surface mining operations or any other operations which would destroy or remove the integrity or support thereof, because this right is not both reasonable and necessary[.]

518, 528 (1985). Finally, "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings[.]" 470 U.S. at 575, 105 S.Ct. at 1512, 84 L.Ed.2d at 529.

Appellate oversight is therefore deferential, and we review the trial court's findings of fact following a bench trial, including mixed fact/law findings, under the clearly erroneous standard. If the trial court makes no findings or applies the wrong legal standard, however, no deference attaches to such an application.[9] Of course, if the trial court's findings of fact are not clearly erroneous and the correct legal standard is applied, its ultimate ruling will be affirmed as a matter of law.

Where findings of fact and conclusions of law are not sufficient as required by law, this Court has authority to remand for further consideration. *See Commonwealth Tire Co. v. Tri–State Tire Co.*, 156 W.Va. 351, 193 S.E.2d 544 (1972); *Chandler v. Gore*, 170 W.Va. 709, 296 S.E.2d 350 (1982) (cases decided under *W.Va.R.Civ.P.* 52).[10] Because the trial court failed to make specific factual findings that we believe are necessary under today's holding, we find it is necessary to remand this case for a new hearing.

### III

#### Discussion

In his first assignment of error, appellant maintains that, in the deed which *conveys* to him the minerals underlying the surface estate and which *reserves* for his benefit "the perpetual right, privilege and easement of entering onto the surface to prospect, explore, mine, extract, produce, store, procure, transport, market and dispose of any and all of the oil, gas, coal and other minerals by any method or machinery now employed[,]" he

also received the right to surface mine the coal underlying the surface estate. Appellant also contends that the special commissioners were selling mining rights with the minerals and that appellant and appellees contemplated the right to surface mine as being included within said mining rights.

The circuit court ruled that absent an express provision in the deed to the contrary, the appellant "does not have the right to conduct surface mining operations or any other operations which would destroy or remove the integrity or support thereof, because this right is not both reasonable and necessary[.]" We believe the circuit court used the wrong legal criteria and for this reason erred in its ultimate determination.

As a general principle, ambiguities in a deed are to be clarified by resort to the intention of the parties ascertained from the deed itself, the circumstances surrounding its execution, as well as the subject matter and the parties' situation at that time. 23 Am. Jur.2d *Deeds* § 221 (1983). *See Ramage v. South Penn Oil Co.*, 94 W.Va. 81, 118 S.E. 162 (1923); *Oresta v. Romano Brothers, Inc.*, 137 W.Va. 633, 73 S.E.2d 622 (1952); *Brown v. Crozer Coal & Land Co.*, 144 W.Va. 296, 107 S.E.2d 777 (1959). *See generally Bruen v. Thaxton*, 126 W.Va. 330, 28 S.E.2d 59 (1943). It is the court's duty then, to place itself in the situation of the parties, as near as may be, to determine the meaning and intent of the language employed in the deed. *See Grill v. West Virginia R.R. Maintenance Auth.*, 188 W.Va. 284, 423 S.E.2d 893 (1992).

It is well-settled that ownership of a mineral estate includes the right to enter upon and use the superjacent surface by such manner and means as is fairly reasonable and necessary to reach and remove the minerals. *Squires v. Lafferty*, 95 W.Va. 307, 121 S.E. 90 (1924); *Buffalo Mining Co. v. Martin*, 165 W.Va. 10, 267 S.E.2d 721 (1980);

9. Appellate courts using the "abuse of discretion" standard have suggested that the "deferential review ordinarily inherent in that standard is modified by a closer review when the appropriate criteria that are established ... are in question." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir.1994) (citation omitted).

10. Applying these principles to the facts of this case, we are of the opinion that the circuit court's factual findings, though not clearly erroneous, are insufficient to resolve this case. For this reason, we find it necessary to vacate the judgment of the circuit court and remand for further consideration consistent with this opinion.

Robert Tucker Donley, *The Law of Coal, Oil and Gas in West Virginia and Virginia* § 141a (1951). *See* James A. Russell, *What Coal Mining Rights Are Appurtenant?*, 11 East.Min.Law Foundation § 9.02[1] (1990); 54 Am.Jur.2d *Mines and Minerals* § 210 (1971). Indeed, the circuit court and all of the parties herein agree that this rule "is based upon the principle that[,] when a thing is granted[,] all the means to obtain it and all the fruits and effects of it are also granted." *Squires, supra* at 309, 121 S.E. at 91 (holding that a coal lessee may enter upon the surface estate to test, by drilling, the thickness of the coal seam, we stated in syllabus point 1, that the mineral owner has also "as incident to this ownership the right to use the surface [of the land] in such manner and with such means as would be fairly necessary for the enjoyment of the mineral estate.)" *Accord* syllabus, *Adkins v. United Fuel Gas Co.*, 134 W.Va. 719, 61 S.E.2d 633 (1950).

In *West Virginia–Pittsburgh Coal Co. v. Strong*, 129 W.Va. 832, 42 S.E.2d 46 (1947), a deed entered into in 1904 reserved to the grantor the surface estate and conveyed all of the coal underlying it to the grantee. The coal owner maintained that it had the right, incident to its ownership, to remove the coal and "that if not by express grant then by necessary implication it has the right to strip mine" a certain portion of the property because such was the only feasible method of mining and removing the coal. *Id.* at 843, 42 S.E.2d at 52.

This Court disagreed and determined, upon "reading the instrument as a whole, that it was the manifest intention of the parties to preserve intact the surface of the entire tract, subject to the use of the owner of the coal 'at convenient point or points' in order 'to mine, dig, excavate and remove all of said coal' *by usual method at that time known and accepted as common practice* in [that county]. We do not believe that this included the practice known as strip mining." *Id.* at 836, 42 S.E.2d at 49.[11] (emphasis added). Accordingly, we held that "[i]n order for a usage or custom to affect the meaning of a contract in writing because within the contemplation of the parties thereto, it must be shown that the usage or custom was one generally followed at the time and place of the contract's execution." *Id.* at syl. pt. 1.

Similarly, in *Brown v. Crozer Coal & Land Company*, 144 W.Va. 296, 107 S.E.2d 777 (1959), we found that three deeds, made in 1904, 1905 and 1907, respectively,[12] did not give owners of minerals the "right to engage in improper mining such as would damage the surface owned by others by auger mining,[13] a method of mining which at the time of the creation of the mineral rights was not [a] usual method of mining known and accepted as common practice ... where the lands in question are located." *Id.* at syl. pt. 8, in part (footnote added). *See also Oresta v. Romano Brothers, Inc.*, 137 W.Va. 633, 73 S.E.2d 622 (1952).

11. In *Strong*, we took note of the ill effects of the practice of surface mining, which " 'may and commonly does cause soil erosion, stream pollution and the accumulation of stagnant water, increases the likelihood of floods, destroys the value of land for agricultural purposes, counteracts efforts for the conservation of soil, water and other natural resources of the state, and in general creates hazards dangerous to life and property[.]' " *Id.* at 843, 42 S.E.2d at 52 (citation omitted). Indeed, "in view of the surface violence, destruction and disfiguration" which inevitably accompany surface mining, such rights are not to be lightly or casually implied. *Rochez Brothers v. Duricka*, 374 Pa. 262, 97 A.2d 825, 826 (1953). *See also Wilkes–Barre Township School District v. Corgan*, 403 Pa. 383, 170 A.2d 97, 100 (1961).

12. The 1904 deed granted "mineral rights in 'all minerals' with 'all rights-of-way, of ingress and egress over, across and through [said land] for

the purpose of removing the minerals & coal therefrom[.]' " Syl. pt. 8, in part, *Brown, supra*. The 1905 deed granted " 'all the coal and other minerals and mineral substances ... together with the right to mine and remove said minerals in the most approved method[.]' " *Id.* The 1907 deed reserved " 'all minerals ... together with all necessary and useful rights for the proper mining, pumping, transporting of said minerals[.]' " *Id.*

13. In *Brown*, the auger mining method and its effects were briefly discussed: "[t]he purpose of using the auger method of mining was to get the coal out and it made no difference to the [mineral owner] that this method would split the [surface owner's] land in two sections, the spoilage being over a mile in length and up to 400 feet wide in places, that the timber on the land in connection with the mining of the coal would be destroyed or diminished in value." *Id.* at 309, 107 S.E.2d at 786.

A severance deed may, on the other hand, *expressly* permit surface mining as a method of extracting underlying minerals. In *Roberts v. Powell*, 157 W.Va. 199, 203, 207 S.E.2d 123, 126 (1974), the grantors reserved " 'all coal *and* mineral underlying the above surface lands and sufficient rights of way to properly mine all of the said coal. The [grantee] shall be paid a reasonable damage for all surface openings and water sinkings that may occur by any mining operations[;]' " and further that " 'all developing of the unconveyed mineral rights ... shall never be construed to permit mining of the surface ... by such means ... known as "stripping" without compensation for the surface destroyed[.]' " (emphasis provided). *See Tokas v. J.J. Arnold Co.*, 122 W.Va. 613, 11 S.E.2d 759 (1940) (landowner cannot prevent surface mining when stripping rights have been expressly and unequivocally excepted from a grant of the surface estate absent "statutory inhibition, fraud or other vitiating circumstances." Syl. pt. 1, in part, *Id.*)

It is appellant's contention that his right to surface mine appellees' surface estate is based upon the intention of the parties to the deed in December of 1988, the time of the grant of the minerals. Appellant argues that, because surface mining was a common method of mining and an accepted practice in Randolph County at that time, he may therefore engage in such mining in order to extract the underlying coal. Furthermore, though not parties to appellant's deed, appellees were, nevertheless, fully aware of the practice of surface mining and its effects on the surface. Finally, appellant argues that the advertisement for the sale of the property did not expressly state that surface mining rights were excluded and not conveyed to the purchaser of the minerals. *See* n. 4, *supra.* Accordingly, appellant is asking this Court to hold that where surface mining is a known method of mining and an accepted, common practice in that locality, the right to surface mine is included as an implied right,[14] incident to the ownership of the underlying minerals.

It is not disputed that surface mining was a known and accepted method of mining in Randolph County at the time the appellant's deed was executed. However, this fact cannot be viewed in isolation or without regard to our decision in *Buffalo Mining Co. v. Martin, supra,* wherein we noted that our decision in *Strong, supra,* was based on the "fundamental principle that a right to surface use will not be implied where it is totally incompatible with the rights of the surface owner." *Buffalo Mining,* 165 W.Va. at 18, 267 S.E.2d at 725. In fact, "[o]ur past cases have demonstrated that any use of the surface by virtue of rights granted by a mining deed must be exercised reasonably[15] so as not to unduly burden the surface owner's use." *Id.* at 18, 267 S.E.2d at 725 (citations omitted and footnote added).[16]

Finally, in *Buffalo Mining,* we concluded that "where implied as opposed to express rights are sought, the test of what is reasonable and necessary becomes more exacting,

---

**14.** Notably, the Supreme Court of Ohio has expressly held that "[t]he right to strip mine for coal is not implicit in the ownership of a severed, mineral estate." Syl. pt. 2, *Skivolocki v. East Ohio Gas Company*, 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374 (1974). "Because strip mining is totally incompatible with the enjoyment of a surface estate, a heavy burden rests upon the party seeking to demonstrate that such a right exists." *Id.* 313 N.E.2d at 378. In *Compass Coal Company v. Pennsylvania Game Commission*, 71 Pa.Cmwlth. 252, 454 A.2d 1167, 1169 (1983), even though "strip mining was a known practice [at the time] the property was conveyed," and the deed reserved to the grantor "all coal[,]" the grantor failed to show "that the parties [to the deed] intended to 'permit [the coal owner] to come upon [the] land and turn it into a battleground with strip mining.' " (citation omitted).

**15.** As early as our decision in *Squires v. Lafferty, supra,* we indicated that a mineral owner's right to use the surface is not to be exercised without restraint. *See* discussion, *supra.*

**16.** In *Buffalo Mining,* a coal lessee erected on the surface estate an electric transmission line to supply power to a mine ventilation shaft. We held that the following express language of the severance deed impliedly permitted such a power line easement:

all proper and reasonable rights and privileges for ventilating and draining the mines and wells ... together, also, with the right of erecting and maintaining upon said land all buildings, oil tanks, machinery, telephone and telegraph lines, and other improvements necessary or convenient for the operations upon said lands ...[.]

*Id.* at 11 n. 1, 267 S.E.2d at 722 n. 1.

since the mineral owner is seeking a right that he claims not by virtue of any express language in the mineral severance deed, but by necessary implication as a correlative to those rights expressed in the deed." *Id.* at 18, 267 S.E.2d at 725. Accordingly, we held, in syllabus points 2 and 3, respectively, of *Buffalo Mining, supra:*

Where there has been a severance of the mineral estate and the deed gives the grantee the right to utilize the surface, such surface use must be for purposes reasonably necessary to extraction of the minerals.

In order for a claim for an implied easement for surface rights in connection with mining activities to be successful, it must be demonstrated not only that the right is reasonably necessary for the extraction of the mineral, but also that the right can be exercised without any substantial burden to the surface owner.

 We hold, therefore, that the grant of a right to surface mine may be express or implied. The right to surface mine will only be implied if it is demonstrated that, at the time the deed was executed, surface mining was a known and accepted common practice in the locality where the land is located; that it is reasonably necessary for the extraction of the mineral; and that it may be exercised without any substantial burden to the surface owner.

As we stated above, the parties do not dispute that, at the time the deed was executed, surface mining was a known and accepted practice in Randolph County, the locality where the land is located. However, notwithstanding appellant's assertion to the contrary, there is nothing in the record indicating that surface mining is either reasonably necessary for the extraction of the minerals [17] or that surface mining can be conducted without any substantial burden to the surface owners. We, therefore, remand this case to the circuit court so as to give the parties an opportunity to more fully develop the record on this issue and to present evidence as to whether surface mining is reasonably necessary to extract the minerals underlying the surface and, if reasonably necessary, whether it can be exercised without any substantial burden to the surface owners herein.[18]

For the reasons stated herein,[19] the order of the Circuit Court of Randolph County, dated August 24, 1993, is hereby reversed and this case is remanded to the circuit court for proceedings consistent with this opinion.

Reversed and remanded.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.

---

17. We note that the transcript of the December 19, 1988 hearing suggests that it might even be physically impossible for appellees' surface to, in fact, be surface mined. Other than this brief exchange between the circuit judge and appellee Steven Fox, there is nothing in the record regarding the feasibility of surface mining or any other method of mining.

18. We cannot ignore the unusual circumstances of this case. Neither appellant nor appellees were in a position to negotiate with the grantors, the special commissioners, the terms of their respective deeds. The special commissioners severed ownership of the land between the "surface" and the "minerals" without defining those terms, without prior authority from the circuit court and without specifying, either in the advertisement or at the sale, whether surface mining rights would be included in the sale of the minerals. The special commissioners sold, at auction, first the "surface" for $248,000 and then the "minerals" for the significantly lesser sum of $13,500.

19. Appellant's second and final assignment of error contends that the aforementioned reservation clause was inadvertently included in his deed and that the circuit court should have corrected this scrivener's error by changing the word "reserve" to "grant" or "convey," thereby transferring to him the right to surface mine the minerals. In light of our resolution of appellant's first assignment of error, it is unnecessary that we address this argument. We recognize the inclusion of the reservation clause in appellant's deed to be highly unusual. Nevertheless, even if this Court were to change the word "reserve" to "grant" or "convey," appellant would still be claiming the implied right to surface mine appellees' land.

Accordingly, as discussed above, appellant must demonstrate that surface mining was a known and accepted practice in Randolph County when the deed was executed; that surface mining is reasonably necessary to extract the coal; and that surface mining will not substantially burden the surface owners.