624 S.E.2d 825

**STATE of West Virginia ex rel. Miguel Quinones, Petitioner Below, Appellant,**

v.

**James RUBENSTEIN, Commissioner, Department of Corrections, Respondent Below, Appellee.**

**No. 32661.**

Supreme Court of Appeals of West Virginia.

Submitted: Nov. 2, 2005.

Filed: Nov. 30, 2005.

---

gree murder conviction. Appellant maintains that the lower court erred in refusing to grant relief on various grounds, including ineffective assistance of counsel and failure to strike jurors for cause. Based upon the briefs and arguments of counsel in this proceeding, a review of the record certified to this Court and the relevant legal authority, we affirm the decision of the lower court.

## I. Factual and Procedural Background

On August 11, 2000, Appellant was convicted of second degree murder for the June 19, 1995, killing of a man which occurred as a result of a dispute involving cocaine.[1] Appellant, Miguel Gonzalez and Damien Bagut were present during the murder, and Mr. Bagut testified at Appellant's trial that he inflicted the fatal gunshots into the victim. Appellant was sentenced to a determinate twenty-five year sentence, whereas Mr. Bagut received a twenty year sentence in return for his plea of guilty. During his juvenile proceeding, Mr. Gonzalez admitted to being an accessory after the fact and was adjudicated delinquent.

The relevant events surrounding the murder were brought out during the trial. After his mother died in 1995 when Appellant was sixteen years old, a friend named Miguel Gonzalez suggested that Appellant move with him to Fayette County, West Virginia.[2] The two young men moved into a house where Damien Bagut and others lived. Mr. Gonzalez knew Mr. Bagut before moving to West Virginia, although Appellant did not. Appellant soon discovered after moving to the house that Mr. Bagut was selling illegal drugs; the murder victim was one of Mr. Bagut's customers.

Appellant testified that on the day of the murder he was asleep on the couch when the victim arrived at the house. He awakened to the sound of a gunshot and instinctively moved toward the sound. He discovered Mr. Bagut and the victim each holding guns. The victim dropped his gun after he saw Appellant and lunged toward him. Appellant maintained that he did not have a gun that

Jack L. Hickock, Public Defender Services, Charleston, for the Appellant.

Carl L. Harris, Prosecuting Attorney, Fayette County, Fayetteville, for the Appellee.

The Opinion of the Court was delivered PER CURIAM.

PER CURIAM.

This matter is before us as an appeal of the order entered on August 6, 2004, by the Circuit Court of Fayette County denying Miguel Quinones (hereinafter referred to as "Appellant") habeas corpus relief. This order was entered after an omnibus hearing at which Appellant challenged his second de-

---

1. Appellant was a juvenile at the time of the murder but was transferred to adult status on February 6, 1997, pursuant to the provisions of West Virginia Code § 49-5-10 (2001) (Repl.Vol. 2004).

2. A report of the defense investigator revealed that Appellant's father was serving a life sentence in another state for a murder conviction.

day and he did not shoot the victim but that Mr. Bagut fired all the shots which killed the victim.[3] Indeed, Mr. Bagut testified at trial that he shot the victim in the head more than once and Appellant did not have a gun when the shooting occurred. Both Mr. Bagut and Appellant testified at the murder trial that Mr. Bagut put a plastic bag over the victim's head and secured it with a rope around the victim's neck so as to contain the blood. Mr. Bagut and Mr. Gonzalez, who had been asleep and did not witness the shooting, dragged the body to a van, which Mr. Bagut drove away alone. The victim's body was later found in the van; a passerby spotted the van which had been driven into a creek.

The State's witnesses included two women with whom Mr. Bagut had made arrangements to drive the trio to New York City after the murder. The women testified that they overheard the conversation of the three young men, some of which was in Spanish. The women essentially said that they understood from the conversation that both Mr. Bagut and Appellant had shot the victim in the face and that Appellant had secured the bag on the victim's head. Other pertinent facts from the trial will be related later in this opinion within the discussion of the assigned errors.

The jury found Appellant guilty of murder on August 11, 2000.[4] On September 22, 2000, the trial court denied Appellant's motion for probation and sentenced him to a definite term of twenty-five years in the state penitentiary. Thereafter, a petition for appeal was filed to this Court which alleged trial court error for: failure to strike two jurors for cause; improperly handling the matter of prosecutorial misconduct regarding

pretrial publicity which warranted a mistrial being declared; and improperly denying the admission of a statement of the unindicted co-defendant Miguel Gonzalez. This Court refused Appellant's petition for appeal on November 9, 2001.

Appellant filed a pro se petition for a writ of habeas corpus after which the lower court appointed counsel to represent him. An amended petition was filed on May 29, 2003, and an evidentiary hearing was held on that date. Counsel for both sides submitted proposed findings of fact and conclusions of law, and the lower court denied relief by order entered on August 6, 2004. It is from this order that the present appeal is taken.

## II. Standard of Review

■ As this case is an appeal of a denial for a writ of habeas corpus, we first note that "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. Pt. 1, *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975). In *Phillips v. Fox*, 193 W.Va. 657, 458 S.E.2d 327 (1995), we further stated that

[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Id.* at 661, 458 S.E.2d at 331.

A number of issues are raised by Appellant through his attorney and a supplemental pro se brief.[5] This Court's focus in a habeas

---

3. The State medical examiner testified that the victim sustained three gunshots to the head.

4. The apparent delay in trial of the 1995 murder was due in part to Appellant's escape in 1997 from a detention center where he had been placed after his initial extradition from New York following the murder. Appellant was located in another state and extradited for a second time in 1999.

5. Appellant initially sought to appeal the habeas corpus denial pro se, alleging eleven errors involving trial and post-conviction proceedings. Once this Court granted the pro se petition and set the matter on the argument docket, Appellant

requested that attorney Jack L. Hickock represent him. The assignments of error made by Mr. Hickock involve claims of abridgement of due process due to ineffective assistance of trial counsel and improper refusal of the trial court to strike two jurors for cause. Mr. Hickock then listed in his brief the following four items which Appellant had raised in his pro se petition but which Mr. Hickock admittedly did not fully develop: the habeas court failed to consider or rule on all grounds raised in the habeas corpus petition; the habeas court accepted as true some false allegations of the State regarding circumstances surrounding Appellant's extradition; the evidence admitted at trial was insufficient to support a murder conviction; and trial court

corpus review is on constitutional matters, which we plainly expressed in syllabus point four of *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979), by stating: "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." *See also State ex rel. Phillips v. Legursky,* 187 W.Va. 607, 608, 420 S.E.2d 743, 744 (1992) ("Traditionally, we have held that habeas corpus is not a substitute for an appeal and that a showing of error of a constitutional dimension is required in order to set aside a criminal conviction in a collateral attack by writ of habeas corpus."). As a result, we confine our review in this case to issues having constitutional ramifications, which are ineffective assistance of counsel and failure to strike jurors for cause. Any review standards uniquely applicable to these particular areas will be identified within the discussion of each subject.

### III. Discussion

#### A. Ineffective Assistance of Counsel [6]

Appellant maintains that his trial counsel provided ineffective assistance because he (1) neglected to conduct an adequate investigation; (2) did not adequately advise Appellant and prepare him to testify; and (3) failed to subject the States's case to meaningful adversarial testing. He then contends that the cumulative effect of all of counsel's deficiencies deprived him of due process of law which resulted in his conviction of a more serious offense than his co-defendants and a punishment which was disproportionate to his involvement in the crime.

▇▇▇▇ Appellant's right to competent and effective assistance of counsel is constitution-

ally guaranteed. U.S. Const., amend. VI; W.Va. Const., art. III, § 14. In West Virginia,

> claims of ineffective assistance of counsel are ... governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). The objective standard we must apply requires us to

> determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at 6–7, 459 S.E.2d at 117–18, Syl. Pt. 6, in part. If the actions of defense counsel are found to be unreasonable, then we must determine whether the defendant was prejudiced as a result. As this Court in *State v. Miller* stated: "To demonstrate prejudice [when asserting a claim of ineffective assistance of counsel], a defendant must prove there is a 'reasonable probability' that, absent the errors, the jury would have reached a different result. 466 U.S. at 694, 104 S.Ct.

error in the treatment of pretrial publicity of the murder case involving the prosecutor. Additionally, a supplemental pro se brief was attached to Mr. Hickock's brief identifying a somewhat different list of errors. We note that during his testimony at the omnibus hearing Appellant, in response to a question posed by the presiding judge, indicated that he was waiving all issues except his claims of being deprived of a fair trial due to ineffective assistance of counsel and being disproportionately punished in light of his level of involvement in the crime.

**6.** Appellant has been represented by different lawyers at the proceedings leading up to this appeal. At the outset, Travers R. Harrington, Jr.

was Appellant's court-appointed counsel who represented Appellant in the juvenile proceedings but, for reasons not entirely clear from the record, was replaced nearly seven months prior to the murder trial by James W. Keenan. Mr. Keenan represented Appellant through his trial and direct appeal. When Appellant filed a pro se petition for a writ of habeas corpus, the lower court appointed James W. Blankenship III to represent him. Mr. Hickock joined Mr. Blankenship in his representation of Appellant at the omnibus hearing. Mr. Hickock succeeded Mr. Blankenship in presenting this appeal. The ineffective assistance of counsel claim before us solely involves the performance of Mr. Keenan.

at 2068, 80 L.Ed.2d at 698." 194 W.Va. at 15, 459 S.E.2d at 126.

With regard to the issue of inadequate investigation, Appellant contends that trial counsel was remiss by: taking no action on two pretrial motions filed by the attorney originally appointed by the court to represent him; not reviewing the prosecutor's file or visiting the crime scene; not interviewing the State's witnesses; and not attempting to locate Miguel Gonzalez whom Appellant alleges would have proven a vital witness for his defense.

■ With regard to the responsibility of an attorney to investigate, the United States Supreme Court in *Strickland v. Washington* said, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." 466 U.S. at 691, 104 S.Ct. 2052. With this backdrop, we turn to examine Mr. Keenan's performance as trial counsel.

■ Mr. Keenan explained at the habeas proceeding that he had discussed with Mr. Harrington the pretrial motions which had been filed regarding the exclusion of evidence and lineup identification. Mr. Keenan said that he determined after further consultation with the prosecution that evidence of other crimes would not be advanced so there was no need to pursue Mr. Harrington's motion to exclude evidence. We note that the trial record reflects that other crimes evidence was not introduced. As to the lineup identification motion, Mr. Keenan testified at the habeas hearing that as a result of his review of the case he believed pursuing the motion would be fruitless. We have no basis on which to find these tactical decisions unreasonable under the circumstances.

■ Mr. Keenan admitted to not reviewing the case file at the prosecutor's office, but testified at the omnibus hearing that he reviewed the file he inherited from former counsel, Travers R. Harrington, which contained copies of the contents of the prosecutor's file. To supplement his review of this file, Mr. Keenan said he met with Mr. Harrington and consulted with the private investigator Mr. Harrington had hired. Mr. Keenan also related during his testimony that his investigation included a visit to the crime scene, albeit without Appellant accompanying him. Additionally, he reviewed drawings, reports and photographs collected by the investigating law enforcement officers as well as spoke with the officers in advance of their trial testimony. Mr. Keenan admitted that he had not interviewed the women who had driven the trio to New York after the murder was committed even though they were listed to testify at the murder trial as witnesses for the State. However, Mr. Keenan explained at the habeas hearing that he spoke with Mr. Harrington about the interviews he had conducted with the women and he reviewed the investigator's reports containing information about the interviews the investigator had with these witnesses. Our review of Mr. Keenan's cross examination of these witnesses supports a finding that Mr. Keenan's investigation and preparation was reasonable and adequate.

However, despite the in-depth review of the materials in his possession, the record reflects that Mr. Keenan neglected to review the file in the prosecutor's office. As a consequence, Mr. Keenan was not aware of a significant document in that file which was apparently missing from the Harrington materials. That document was a multi-page statement of Miguel Gonzalez to the police regarding events surrounding the murder, cover-up and flight to New York. The statement indicated that Appellant had not shot the victim, was not the person who placed the bag on the victim's head and did not move the body to the van or otherwise assist in removing the body from the scene. The record shows that Mr. Keenan did not discover the importance of the Gonzalez statement until the day of trial when Appellant presented a few pages of the statement, obtained from an undisclosed source, to Mr. Keenan. The trial court appropriately granted a continuance allowing defense counsel time to review the information, but Mr. Keenan did not subpoena Mr. Gonzalez and chose instead to attempt to have the statement admitted into evidence during the trial, which proved unsuccessful. Appellant con-

tends that due to Mr. Keenan's inadequate investigation his defense was weakened because a vital witness was not procured to testify at trial.

Mr. Keenan's reliance on the completeness of a file he described as voluminous, which he inherited from another attorney who had no doubt developed the file not only from materials obtained from the prosecutor but also from his investigator and other sources, is not reasonable. Mr. Keenan said that he had checked with the prosecutor who had indicated that he had provided all of the information he had to Mr. Harrington, but reliance on that representation is simply not acceptable especially under the circumstances. Given the seriousness of the offense charged, the age of the accused, the amount of time which had passed between the murder and Mr. Keenan's appointment to the case, and the volume of the file, a review of the file in the prosecutor's office should have been completed at the outset of representation. Finding Mr. Keenan's performance in this regard to be deficient, we now must determine whether there is a reasonable probability that the outcome of the trial would have been different had counsel conducted a proper investigation.

 Appellant ardently argues that the in-person testimony of Mr. Gonzalez "exonerating ... [Appellant] would have been very powerful" and would likely have made a change in the outcome of the case. While Mr. Keenan acted unreasonably, we are simply not convinced that his conduct prejudiced the outcome of Appellant's case. Nothing in the record indicates the exact whereabouts of Mr. Gonzalez since the time he had been released in 1998 from custody for his involvement as an accessory to the murder. Furthermore, even if he had been located, we are not convinced of the probability that his testimony would have added anything to Appellant's defense. It is not contested that Mr. Gonzalez was asleep at the time the gunshots were fired and he did not witness any of the shooting. Damien Bagut, who did testify at trial, indicated that he fired all of the shots and that Appellant had not assisted with the removal of the body from the murder scene. Appellant repeated this rendition of what occurred during his trial testimony. Mr. Gonzalez had nothing more to offer in the

way of testimony and actually saw less of what had occurred during the course of the crime. Moreover, while the statement given to police by Mr. Gonzalez was not admitted into evidence, his testimony at the juvenile proceeding about the events surrounding the murder was admitted and the jury had the benefit of that information to reach its verdict. We do not find it likely that Mr. Gonzales' in-person testimony at trial would have been more persuasive to the jury.

 Appellant next contends that Mr. Keenan did not properly advise or prepare him regarding his testimony. Appellant admits that there was poor communication and little rapport between Mr. Keenan and himself. Nevertheless, Appellant fails to specifically indicate what further information or direction he needed from counsel. The record shows that Mr. Keenan met with Appellant at the regional jail before trial on six occasions prior to trial. According to Appellant's brief, the six visits amounted to, at most, only 5.1 hours spent in pre-trial consultation. Appellant also claims that counsel's repeated requests during trial for continuances in order to consult with Appellant demonstrated that counsel had not prepared Appellant for trial. Mr. Keenan testified at the habeas hearing that in addition to discussing the evidence in the case on each occasion that he visited Appellant in jail he also discussed the Appellant's right to testify or not testify as well as the State's right to cross-examine him if he testified. While spending only 5.1 hours with a client facing a serious felony charge is far from commendable, our review of the record does not reveal that Appellant was ill-prepared for trial or could have benefitted from further direction from Mr. Keenan either before or during trial.

 This leads us to Appellant's contention that his trial counsel failed to subject the States's case to meaningful adversarial testing. In this regard, Appellant points specifically to counsel's inability to succeed in having the Gonzalez statement to the police admitted into evidence and charges that Mr. Keenan's cross examination of the State's witnesses was inadequate. We find no merit in this claim. The record reflects that Mr. Keenan repeatedly tried to have the Gonza-

lez statement introduced as evidence but the trial judge ultimately ruled that the statement was not made under oath and was not as trustworthy as the testimony of Mr. Gonzalez during a court proceeding. We have no reason to conclude that the inability to convince the trial court to allow the out-of-court statement to be admitted into evidence was due to defense counsel's substandard performance. Likewise, our review of the trial transcript does not reveal that Mr. Keenan was in any way ill-prepared in his cross-examination of the State's material witnesses. Furthermore, as we previously observed in *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995), "[t]he method and scope of cross-examination 'is a paradigm of the type of tactical decision that [ordinarily] cannot be challenged as evidence of ineffective assistance of counsel.' *Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir.1983), *cert. denied*, 464 U.S. 1065, 104 S.Ct. 750, 79 L.Ed.2d 207 (1984)." *Daniel* at 328, 465 S.E.2d at 430.

Based upon all of the above-stated reasons, we do not find that Appellant was denied a fair trial because of ineffective assistance of counsel and his allegations in this regard must fail. We find no abuse of discretion by the lower court regarding the ineffective assistance of counsel claim and agree with the court's conclusion, memorialized in the August 6, 2004, order, that Appellant "has failed to show... cumulative deficiencies [in counsel's performance] upon which to base a finding that ... [Appellant] was denied due process of law."

**B. Failure to Strike Jurors for Cause**

██ Appellant contends that the trial court committed error by refusing to strike two jurors from the jury panel for cause, thus requiring him to use two of his peremptory challenges to strike the jurors. One of these jurors during the course of years had retained the legal services of the county prosecutor and the assistant prosecutor assigned to the murder trial to address legal matters associated with his business. The other juror indicated he had serious concerns with people who use alcohol and drugs since both of his children had tragically died, one due to a drunk driver. Both jurors indicated upon individual questioning by the court that they could be fair and unbiased as jurors and the court denied defense counsel's motions to strike for cause.

Appellant urges us to find that our holding regarding rehabilitation of jurors in *O'Dell v. Miller*, 211 W.Va. 285, 565 S.E.2d 407 (2002), should be applied to his case. We do not agree. In *O'Dell* we stated in syllabus point five that "[o]nce a prospective juror has made a clear statement during *voir dire* reflecting or indicating the presence of a disqualifying prejudice or bias, the prospective juror is disqualified as a matter of law and cannot be rehabilitated by subsequent questioning, later retractions, or promises to be fair." We conclude from our careful review of the record that the matters the two juror candidates originally raised did not represent prejudice beyond question so as to indicate that they had a present and fixed view of the case. Without the demonstration of such disqualifying prejudice or bias, the rule in *O'Dell* is not implicated. We further note our holding in syllabus point seven of *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995), in which we said:

A trial court's failure to remove a biased juror form a jury panel does not violate a defendant's right to a trial by an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 14 of Article III of the West Virginia Constitution. In order to succeed in a claim that his or her constitutional right to an impartial jury was violated, a defendant must affirmatively show prejudice.

Failing to find the requisite showing of prejudice demonstrated in this case, we find no error on which to grant relief in habeas corpus.

**IV. Conclusion**

Finding no reversible error for the reasons stated above, the order entered on August 6, 2004, by the Circuit Court of Fayette County is affirmed.

Affirmed.