603 S.E.2d 656

**John MOSS, III, Petitioner Below, Appellant**

v.

**George TRENT, Warden of the West Virginia State Penitentiary, Respondent Below, Appellee.**

**No. 31646.**

Supreme Court of Appeals of West Virginia.

Submitted June 8, 2004.

Decided July 1, 2004.

Lonnie C. Simmons, DiTrapano, Barrett & DiPiero, PLLC, Charleston, for the Appellant.

Darrell V. McGraw, Attorney General, Jon R. Blevins, Assistant Attorney General, Charleston, for the Appellee.

PER CURIAM.

John Moss III appeals the January 30, 2003, order of the Circuit Court of Kanawha County, denying his petition for a writ of habeas corpus in connection with his April 24, 1990, conviction for three counts of first degree murder. As the basis for his appeal, Appellant argues that the lower court wrongly concluded that this Court's ruling in *Zain* I[1] did not afford him habeas corpus relief. Upon our full review of this matter, we reach the same conclusion that the circuit court did with regard to the unavailability of relief based on this Court's ruling in *Zain* I. Having found no error with regard to the trial court's rulings, we affirm.

## I. Factual and Procedural Background

The facts concerning the underlying conviction for three counts of murder were set forth in *In Re Moss,* 170 W.Va. 543, 295 S.E.2d 33 (1982). The murders for which Appellant was convicted occurred in December 1979.[2] Following an initial conviction for these murders in 1984, this Court set aside those convictions due to the trial court's failure to poll the jurors regarding their exposure to certain prejudicial remarks concerning Appellant's guilt that the prosecutor made during a radio interview broadcast. *See State v. Moss,* 180 W.Va. 363, 376 S.E.2d 569 (1988). Upon the conclusion of the second trial for these murders, Appellant was convicted on April 24, 1990. By order entered on March 12, 1991, this Court refused Appellant's appeal from the 1990 conviction. Following the issuance of *Zain* I, Appellant filed a habeas corpus petition in the Circuit Court of Kanawha County through which he requested a new trial due to the allegedly prejudicial testimony given by Trooper Fred Zain, former serologist for the West Virginia State Police Crime Laboratory.

The Honorable Andrew MacQueen, by decision entered on September 10, 1998, ruled that Appellant was not entitled to relief under *Zain* I because Mr. Zain was not the chief serologist at this time and his work was being supervised; Appellant's confession provided sufficient evidence upon which to base his conviction; and specific details pertinent to that confession were corroborated by the location of physical evidence. Despite these rulings, Judge MacQueen later determined that it was necessary to consider whether

---

1. *In Re Investigation of the W.Va. State Police Crime Lab.,* 190 W.Va. 321, 438 S.E.2d 501 (1993).

2. The victims were twenty-six-year-old Vanessa Reggettz, her four-year-old daughter Bernadette, and her seven-year-old son, Paul Eric.

Mr. Zain's testimony had a prejudicial effect on the jury. Upon consideration of this issue by the Honorable Louis Bloom,[3] the trial court refused the habeas petition, ruling that the introduction of "Zain-related evidence and testimony at Moss's trial did not prejudice the jury" and that Appellant had not introduced any new evidence on the issue of the voluntariness of his confession. Appellant seeks a reversal of the ruling denying his entitlement to habeas corpus relief.

## II. Standard of Review

In syllabus point one of *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975), we held that "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Generally applicable is our standard for conducting review of circuit court decisions, as restated in *Phillips v. Fox*, 193 W.Va. 657, 458 S.E.2d 327 (1995):

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Id.* at 661, 458 S.E.2d at 331 (citing *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995)).

With these standards in mind, we proceed to review the trial court's rulings on the issue of habeas corpus relief to determine if any error was committed.

## III. Discussion

In arguing that he is entitled to relief, Appellant refers to Judge MacQueen's September 10, 1998, ruling, and contends that the lower court initially determined that *Zain* I was inapplicable. Critically, however,

Judge MacQueen never found the rulings of *Zain* I to be inapposite. To the contrary, Judge MacQueen structured his analysis based on the report prepared by Judge Holliday that was adopted by this Court and attached to *Zain* I. In that report, Judge Holliday identified the following three-pronged step for conducting review of cases where Mr. Zain's involvement was suspected:

> The circuit court could then appoint counsel to represent the [habeas corpus] petitioner to ascertain (1) whether Zain was involved in the petitioner's prosecution; (2) whether Zain rendered an inculpatory report or offered inculpatory testimony; and (3) whether, excluding the serological evidence, the other evidence adduced at trial would have been sufficient to sustain a conviction beyond a reasonable doubt.

190 W.Va. at 340, 438 S.E.2d at 520.

In conducting his review of Appellant's habeas corpus claims, Judge MacQueen initially recognized the unique posture that this case presented. Compared to the prototypical criminal case involving allegations of Mr. Zain's malfeasance, Appellant's case is distinguishable for several reasons, as Judge MacQueen observed. First, unlike the multitude of "Zain cases," this was an early case in which Mr. Zain was not yet the supervisor[4] of the State Police Crime Laboratory and, consequently, his work was being supervised by another serologist, Trooper Robert Murphy. With regard to the blood test reports relied upon in this case, Judge MacQueen found that "it is clear that both Zain and Murphy conducted analyses of some of the blood." Another significant distinction with regard to this case was "the fact that Zain and Murphy had discovered genetic markers in blood samples from the Reggettz' [victims'] residence that excluded Paul Reggettz [original suspect] and would ultimately incriminate John Moss, long before a sample of Moss's blood was obtained and analyzed."[5]

---

3. Due to the retirement of Judge MacQueen, this case was reassigned to Judge Bloom.

4. At the time the reports pertinent to this case were prepared, Mr. Zain had been employed by the State Police Laboratory for about three years.

5. As the State comments, this stands in stark contrast to the paradigmatic Zain scenarios where he would manufacture evidence to assist in securing a conviction of the initial suspect. At the time the blood analysis reports at issue were prepared in this case, Mr. Reggettz, and *not*

Finally, with regard to the forensic evidence under scrutiny, the expert witness employed by Appellant, Dr. David H. Bing, "did not take direct issue with either of the[ ] conclusions" presented against Appellant at trial based on this evidence. As Judge MacQueen explained,

> The forensic evidence presented against the petitioner [Appellant] at trial consisted of two essential conclusions. First, blood stains sampled at the scene contained genetic markers that were not donated by any of the victims or by Paul Reggettz, but matched the known blood sample from John Moss. Second, the combination of markers in the samples from the scene that matched the petitioner's blood occurred in one-tenth of one percent (.1%) and three-hundredths of one percent (.03%) of the general population.

After relating portions of Dr. Bing's testimony, Judge MacQueen concluded:

> It can hardly be said that Dr. Bing characterized Murphy and Zain's scientific conclusions and Zain's testimony as false, inaccurate or invalid. To the contrary, based on the information available to him, he confirmed the scientific validity of the conclusions. At best, it seems that Dr. Bing suggested that Zain should have ex-

plained to the jury that only a limited number of genetic markers distinguished the petitioner's blood from that of the victims. From the evidence presented at trial, the jury could not have failed to appreciate this fact.

Upon consideration of these distinguishing factors and the record as developed, Judge MacQueen concluded that the rule[6] announced in *Zain* I and II[7] "should not operate to nullify the serology evidence offered during the petitioner's trial" and "[t]hat in the absence of specific evidence that the blood test results were falsified or were substantially incorrect, there is no basis to set aside the verdicts against the petitioner." After making this ruling, the trial court proceeded to the third-prong of the analysis suggested by Judge Holliday to consider whether "even if the serological evidence is completely disregarded, there remains sufficient evidence to sustain the conviction." Following his summary of the evidence presented at trial against Appellant,[8] Judge MacQueen ruled that "petitioner's incriminating statements, the statement's harmony with the physical evidence and related corroboration were certainly sufficiently persuasive to convince twelve reasonable persons [of] his guilt beyond a reasonable doubt."

Appellant, was the prime suspect for the murders under investigation.

6. What Judge MacQueen refers to is this Court's conclusion that any evidence offered by Mr. Zain in any criminal prosecution "should be deemed invalid, unreliable, and inadmissible in determining whether to award a new trial" in a subsequent habeas corpus proceeding. 190 W.Va. at 326, 438 S.E.2d at 506.

7. *See* Syl. Pt. 3, in part, *In re W.Va. State Police Crime Lab.*, 191 W.Va. 224, 445 S.E.2d 165 (1994) (holding that "[s]erology reports prepared by employees of the Serology Division of the West Virginia State Police Crime Laboratory, other than Trooper Fred S. Zain, are not subject to the invalidation and other strictures contained in" *Zain* I). As Appellant notes, however, by administrative order entered on June 10, 1999, there currently is an investigation being performed to determine whether the work of any other employees of the State Police Crime Lab should be similarly viewed as presumptively invalid, unreliable, and inadmissible.

8. That summary included the following:

The petitioner gave statements in which he confessed to the killings and provided detail that gave particular credence to the confession.... [T]he confession and the evidence derived from it provided particular indices of reliability beyond the fact of a confession alone. For example, petitioner's confession was largely consistent with the physical evidence. He said that he went to the Reggettz residence to steal money and that he had taken a camera and what he recalled were dishes. He told investigators that he had taken the camera to his parents [sic] home in Cleveland, Ohio, and that he had given the dishes to a Ms. Arbutus Johnson. A camera was obtained from the petitioner's father's car and was subsequently identified by Paul Reggettz during the trial. Ms. Johnson said that Moss had given her a set of silverware as a Christmas gift sometime during December, 1979. Ms. Johnson also stated that Moss was scratched when she saw him. Significantly, before he returned to his home in Cleveland, the petitioner lived with his grandfather at his grandfather's home which was immediately behind the Reggettz residence. The State has identified other, similar portions of the petitioner's confession which reinforced its reliability.

■ Notwithstanding Judge MacQueen's denial of relief to Appellant in September 1998, his counsel ultimately convinced the trial court to examine the additional issue of whether the introduction of Mr. Zain's testimony had a prejudicial effect on the jury under this Court's holdings in syllabus points two and three of *Zain* I. In syllabus point two, we held that "[a]lthough it is a violation of due process ·for the State to convict a defendant based on false evidence, such conviction will not be set aside unless it is shown that the false evidence had a material effect on the jury verdict." 190 W.Va. at 322, 438 S.E.2d at 502. Upon a demonstration of false evidence used to sustain a conviction, we reasoned: "The only inquiry that remains is to analyze the other evidence in the case under the *Atkins* rule [9] to determine if there is sufficient evidence to uphold the conviction." *Id.* at 326, 438 S.E.2d at 506 (footnote added). Accordingly, in syllabus point three of *Zain* I we restated the test for evidentiary error:

> " 'Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.' Syllabus Point 2, *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980)."

190 W.Va. at 322, 438 S.E.2d at 502.

■ The crux of Appellant's appeal is that the trial court, in applying the *Atkins* test,

wrongly concluded that Mr. Zain's testimony did not have a prejudicial effect on the jury. Emphasizing the personal and extensive involvement of Mr. Zain in his prosecution, Appellant states that Mr. Zain collected blood samples at the scene; performed testing on critical pieces of evidence; testified in both of Appellant's trials; and presented key evidence that enabled the jury to decide which of two confessions to believe.[10] Downplaying the significance of Mr. Murphy's involvement in the case, Appellant argues that Mr. Zain's testimony was the key testimony based upon which the jury made its decision regarding which of the two confessions was credible.

In response to these arguments, the State identifies a number of inaccurate statements made by Appellant. As opposed to the scenario described by Appellant with Mr. Zain improperly and overzealously going to the Reggettz' home to collect blood samples, Mr. Zain only went to the scene of the crimes to collect those samples upon being called by Trooper Williams for that express purpose. Moreover, at least one critical piece of evidence—the pajama top of Bernadette Reggettz—was collected by Trooper Williams and submitted for testing at a later date in time. The testing on this top, which Dr. Bing testified to as constituting a complete match with the blood typing of Appellant,[11] was performed by Trooper Murphy. Mr. Zain's only involvement with this critical piece of evidence was his reading of the report with the blood typing results to the jury.

While Appellant strenuously argues that absent the testimony of Mr. Zain the jury had no basis from which to choose between the two confessions, the State explains why this contention is specious. In making his argument, Appellant chose to ignore various items of evidentiary significance that the jury

---

9. *See* Syl. Pt. 2, *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979).

10. The two confessions of which the jury was presented with evidence were those of Mr. Reggettz and Appellant.

11. During his deposition, Dr. Bing testified as follows: "[T]here is one result here where there is a complete match between Mr. Moss and a stain found at the crime scene. That's item seven, the kitchen door curtain. And that's also the case reported on the clothing of Bernadette Reggettz ... and the Christmas wrapping paper...."

was presented with that may have affected their decision regarding the truthfulness of the two confessions. Mr. Reggettz testified at trial and explained the circumstances surrounding the giving of his confession [12] and fully repudiated that confession. Dr. Irving Sopher, the Chief Medical Examiner, testified both to specific marks on the victims' bodies and the contents of their stomachs with regard to the time of their last meal. The details of Dr. Sopher's testimony suggested the veracity of Appellant's confession, as opposed to that given by Mr. Reggettz.

Perhaps the most convincing corroborative evidence that the jury heard on the issue of confessions, however, was testimony describing the recovery of various items taken from the Reggettz' home.[13] During his confession, Appellant related that he had taken a camera and what he described as "some dishes" from the Reggettz' home. He further indicated that he had given the camera to his father and the dishes to a Ms. Arbutus Pomeroy, his best friend's mother. The camera that was taken from the Reggettz' home was discovered in Appellant's father's car in Cleveland, Ohio, and Ms. Arbutus Pomeroy testified that Appellant had given her silverware, which was identified as having been taken from the Reggettz' home, as a Christmas present, shortly after the time when the murders occurred.

Setting aside the Zain evidence, the confession given by Appellant was powerfully incriminating evidence, as Judge Bloom recognized in ruling on the habeas corpus petition:

Moss's own confession is a key piece of evidence that stands independently of any Zain-related evidence. Further, the confession is corroborated in a number of significant ways, which the Court has described as "indices of reliability." In focusing on Zain, Moss ignores the power of his own well-corroborated confession.

The State convincingly argues that there was sufficient testimony offered through individuals other than Mr. Zain from which the jury could have based its decision to believe Appellant's confession. Given the abundance of evidence that the jury was presented with that supported Appellant's confession to having committed the subject murders,[14] we simply cannot accept Appellant's argument that Mr. Zain's testimony was *per se* prejudicial. Accordingly, we find no error with the trial court's conclusion that the introduction of testimony or evidence by Mr. Zain did not have a prejudicial effect on the jury. *See* Syl. Pt. 2, *Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979).

■■■ Although Appellant sought to raise, according to the State for the fourth time, the issue of the voluntariness of his confession, the trial court found that he "failed to present any new evidence on the voluntariness of his confession." The trial court further opined:

[H]e seems to argue that the fact that Mr. Reggettz had, at one point, given a confession somehow invalidates Moss's own confession. The existence of the Reggettz confession does not have the devastating effect that Moss desires because the Reggettz confession does not impugn the voluntariness of Moss's confession. At most,

---

**12.** He had been questioned repeatedly by as many as three or four troopers at a time over the course of almost fourteen hours before he confessed to the crimes. Among the explanatory testimony that the jury heard regarding the circumstances surrounding the giving of this confession was the testimony of Trooper Woodyard, who answered "yes" to the State's question of "isn't it true that when he [Mr. Reggettz] made his first inculpatory statement, he said, 'If I tell you what you want, then you won't let them hurt me?'"

**13.** *See supra* note 8.

**14.** Additional evidence that the jury heard included the fact that Vanessa Reggettz' autopsy revealed scalp lacerations that were consistent

with being struck by the butt of a gun, which was found beside her body. In his confession, Appellant stated he had struggled with Vanessa for a gun, and then struck her with the butt of the gun. He also revealed in his confession his knowledge of the broken condition of the gun. In addition, Appellant stated that Vanessa's face was "bumpy," which was inconsistent with her facial appearance on photographs shown to Appellant when he was being questioned, but was consistent with her appearance at the time of her death. Appellant also admitted to having struggled with Vanessa for a knife, and a knife was found beside her body.

it provided fodder for defense theories at trial.

As the State correctly posits, events that took place outside the presence of Appellant's confession (i.e. any malfeasance committed by Mr. Zain) have no bearing on the determination of the voluntariness of that confession. *See State v. Hager,* 204 W.Va. 28, 38, 511 S.E.2d 139, 149 (1998) (citing *Moran v. Burbine,* 475 U.S. 412, 422, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

Having closely examined the arguments presented against the record of this case, we find no merit in the assignments of error raised by Appellant.[15] Accordingly, the order of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

**15.** Given this Court's conclusion that the trial court did not error in finding that Mr. Zain's testimony did not have a prejudicial effect on the jury based on the presence of sufficient independent evidence regarding Appellant's guilt, we do not discuss the purported invalidity of Mr. Zain's testimony.