640 S.E.2d 204

**STATE of West Virginia ex rel., John McLAURIN, Petitioner Below, Appellant,**

v.

**Thomas McBRIDE, Warden, Mount Olive Correctional Complex, Respondent Below, Appellee.**

No. 32983.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 13, 2006.

Decided Nov. 15, 2006.

---

Gregory L. Ayers, Esq., Deputy Public Defender, Kanawha County Public Defender Office, Charleston, for the Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Barbara H. Allen, Esq., Managing Deputy Attorney General, Charleston, for the Appellee.

PER CURIAM.

This case is before this Court upon the appeal of John McLaurin from the July 11, 2005, order of the Circuit Court of Kanawha County, West Virginia, denying him relief in habeas corpus. McLaurin was convicted in that Court in 1989 of two counts of kidnaping, without recommendations of mercy, and seven counts of sexual assault in the first degree. The trial court sentenced McLaurin upon the kidnaping convictions to two life terms without the possibility of parole and to 15 to 25 years each upon the seven sexual assault convictions. The sentences were directed to be served consecutively. In February 1991, this Court refused McLaurin's direct appeal.

In a separate habeas proceeding, the Circuit Court of Kanawha County later set aside one of the kidnaping convictions and two of the sexual assault convictions. The remaining six convictions were upheld. Those rulings were affirmed by this Court in *State ex rel. McLaurin v. Trent*, 203 W.Va. 67, 506 S.E.2d 322 (1998), *cert. denied*, 525 U.S. 1078, 119 S.Ct. 818, 142 L.Ed.2d 677 (1999). In the current proceeding, the Circuit Court set aside the other kidnaping conviction and sentence and awarded a new trial. Consequently, this appeal concerns the denial of habeas relief, pursuant to the July 11, 2005, order, with regard to five convictions of sexual assault in the first degree.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Appellant McLaurin contends that the Circuit Court should have granted him relief in habeas corpus because the trial court, in 1989, committed error: (1) in denying his motion to continue in order to obtain a psychiatric evaluation concerning his competency to stand trial, (2) in denying his motion to sever the charges against him and (3) in refusing his limiting or cautionary instruction to the jury concerning the various charges. Moreover, McLaurin contends that one of the sexual assault convictions violated his protection against double jeopardy and, also, that he was denied the effective assistance of counsel at his sentencing. Upon careful examination and upon the applicable standards of review, this Court concludes that McLaurin's contentions herein are without merit. Accordingly, the July 11, 2005, order of the Circuit Court of Kanawha County denying relief in habeas corpus is affirmed.

I.

Factual and Procedural Background

In June 1988, appellant McLaurin was released from the West Virginia penitentiary, having served prison terms for rape, robbery and felonious assault. According to the State, McLaurin, within 90 days thereof,

committed a number of offenses against three women: C.C., J.T. and B.S.[1]

Specifically, on August 19, 1988, C.C. was entering her car near the Town Center Mall in Charleston, West Virginia, when she was abducted by a male brandishing what he described to her as a .357 Magnum revolver. The assailant forced C.C. to drive to two remote locations where, at each, he sexually assaulted her in the back seat of her vehicle. Thereafter, they drove to a lot near a Holiday Inn in Charleston at which time the assailant exited the car. On September 4, 1988, J.T. was working as a cleaning maid at the Holiday Inn Civic Center in Charleston[2] when, alone in one of the rooms, she was suddenly attacked by a male brandishing what appeared to be an ice pick. The assailant sexually assaulted her three times before fleeing the premises. Subsequently, on September 6, 1988, B.S. was entering her car on the campus of the West Virginia Institute of Technology in Montgomery, West Virginia, when she was abducted by a male brandishing what he told her was a .357 Magnum revolver. The assailant forced B.S. to drive to a wooded area where, after making her exit the car, he sexually assaulted her. Soon after, the assailant forced B.S. to drive to another remote location where he sexually assaulted her in the back seat of her vehicle.

During each of the three episodes, the assailant questioned the victim about her family, admonished her to enjoy herself and ordered her to keep her eyes closed, although, at times, he blindfolded B.S. In the case of C.C. and B.S., the assailant stated that he wished he had met them under "different circumstances."

Appellant McLaurin was arrested and, in April 1989, was indicted by a Kanawha County grand jury with regard to the above inci-

dents. Counts 1–3 charged kidnaping and two instances of sexual assault in the first degree with regard to C.C. Counts 4–6 charged three instances of sexual assault in the first degree with regard to J.T. Counts 7–9 charged kidnaping and two instances of sexual assault in the first degree with regard to B.S. In November 1989, a jury trial was conducted at the conclusion of which McLaurin was found guilty of two counts of kidnaping, without recommendations of mercy, and seven counts of sexual assault in the first degree. McLaurin's post-trial motions were denied, and on December 1, 1989, the trial court sentenced him to the penitentiary as set forth above. Appellant McLaurin's direct appeal was refused by this Court in February 1991.

In *In the Matter of an Investigation of the West Virginia State Police Crime Laboratory*, 190 W.Va. 321, 438 S.E.2d 501 (1993), this Court noted that former State Police Officer Fred Zain had engaged in the systemic falsification of evidence relating to serology in criminal prosecutions. As a result, this Court held, *inter alia*, (1) that a prisoner would be entitled to habeas relief, if, absent the forensic evidence presented by Trooper Zain, the evidence was insufficient "to support the verdict" and (2) that a prisoner seeking such relief could be subject to DNA testing.[3] Accordingly, because Trooper Zain had given incriminating serology testimony against appellant McLaurin at trial, McLaurin filed a petition for habeas relief in this Court. That petition, earlier in time than the one currently under review, was remanded to the Circuit Court of Kanawha County in December 1993 for further proceedings and, ultimately resulted in this Court's opinion in *State ex rel. McLaurin v. Trent, supra.*

---

1. In this sensitive matter, this Court will follow its past practice and shall refer to the three women by initials only. *In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. The record is unclear whether the Holiday Inn Civic Center is the same Holiday Inn in Charleston near the lot where the assailant left C.C.

3. In addition to the above case, known as "Zain I," this Court filed subsequent opinions concerning the validity of State evidence relating to

serology in *In the Matter of An Investigation of the West Virginia State Police Crime Laboratory*, 191 W.Va. 224, 445 S.E.2d 165 (1994) ("Zain II"), and *In the Matter of Renewed Investigation of the State Police Crime Laboratory*, 219 W.Va. 408, 633 S.E.2d 762 (2006) ("Zain III"). *Zain* II and *Zain* III, not relevant to the circumstances herein, concluded that, unlike Trooper Zain, other serologists employed by the State Police had not engaged in the systematic falsification of evidence.

In *McLaurin,* the Circuit Court concluded that, absent the Zain testimony, the evidence was insufficient to support the verdicts with regard to C.C. and that, therefore, McLaurin's convictions under Counts 1–3 of the indictment should be set aside. The Circuit Court determined that, although C.C.'s testimony was generally consistent with the testimony of J.T. and B. S., she was unable to positively identify her assailant. The Circuit Court, however, upheld the convictions pertaining to J.T. and B.S. With regard to Counts 4–6 relating to J.T., the Circuit Court noted, *inter alia,* that two of her co-workers identified appellant McLaurin at trial "as the person that they saw in the hallway of the Holiday Inn within the hour of the perpetration of the sexual assault upon [J.T.]." The Circuit Court stated: "The testimony of [the co-workers] appeared unequivocal on the subject of identity."[4] As to Counts 7–9 relating to B.S., the Circuit Court noted that she was able to positively identify McLaurin at trial as her assailant.[5] This Court, in *McLaurin,* found no error in the rulings of the Circuit Court and affirmed.

**4.** In its final order, the Circuit Court, in *McLaurin,* stated in reference to J.T.:

> This Court finds, therefore, that the evidence that was presented to the jury in this case in respect to the alleged victim [J. T.], recited in Counts 4, 5 and 6 of the indictment in this case was sufficient, if believed, to meet the burden of proof imposed upon the State, and was sufficient to sustain the verdicts of "guilty as charged" ... this finding having been made after excising all of the serological evidence offered by State Chemist Fred Zain.

> Moreover, this Court notes that the Circuit Court ordered DNA testing as a supplement to its review of the habeas petition. As such, the DNA testing was an aid to the Circuit Court's consideration, rather than a specific "basis for the decision to deny [McLaurin] a new trial on counts four through nine." *McLaurin,* 203 W.Va. at 72, 506 S.E.2d at 327. *See, In the Matter of: Renewed Investigation of the State Police Crime Laboratory, (Zain III) supra,* 219 W.Va. at 410 n. 1, 633 S.E.2d at 764 n. 1, indicating that DNA testing has largely replaced the utilization of serology evidence in judicial proceedings. Here, although the DNA testing was inconclusive with regard to C.C. and B.S., the testing was all but conclusive as to J.T. As explained in the Circuit Court's final order, the testing not only failed to acquit McLaurin, it established "that the likelihood of randomly selecting another unrelated individual with a DNA profile consistent with

## II.

### The Current Proceedings

On January 14, 2000, appellant McLaurin filed a *pro se* petition in the Circuit Court of Kanawha County seeking relief in habeas corpus under the West Virginia Post–Conviction Habeas Corpus Act, *W.Va.Code,* 53–4A–1 (1967), *et seq.* An amended petition was subsequently filed by McLaurin's appointed counsel, and the Circuit Court conducted an omnibus habeas corpus hearing over several days beginning on April 22, 2003.[6] The Circuit Court's final order was entered on July 11, 2005.

Pursuant to that order, the Circuit Court set aside McLaurin's kidnaping conviction and sentence under Count 7 of the indictment, relating to B.S., and awarded a new trial. The ruling was based upon the Circuit Court's conclusion that McLaurin's life sentence under that Count was undermined by the fact that the jury was never specifically required to determine whether McLaurin failed to release B.S. without bodily harm. *W.Va.Code,* 61–2–14a (1965)[7] However, the

the major contributor of sperm from the vaginal swab from [J.T.] would be one in greater than 5.5 billion, both in terms of the world population, as well as when racial and ethnic subgroups are statistically analyzed."

**5.** As to B.S., the final order of the Circuit Court, in *McLaurin,* stated that, after excising all of the serology evidence submitted by Trooper Zain, "sufficient evidence was presented to the jury in this case to be able to convince a determiner of fact, if they believed such evidence, beyond a reasonable doubt, and the evidence was sufficient to sustain a verdict of guilty as charged as in counts 7, 8 and 9 of the indictment herein."

**6.** Pursuant to an order entered on April 15, 2003, the Circuit Court incorporated the record in McLaurin's underlying case, including the trial transcript, into its consideration of the requested habeas relief.

**7.** Pursuant to *W.Va.Code,* 61–2–14a (1965) (since amended), a term of years, rather than a life sentence, for kidnaping may be imposed in certain circumstances where the person against whom the offense is committed is released or returned "without bodily harm." Although the Circuit Court's ruling concerning Count 7 is not a part of this appeal, this Court notes the reasoning of the Circuit Court as set forth in the order of July 11, 2005: "The existence of the fact of

Circuit Court denied habeas relief with regard to the five convictions of sexual assault in the first degree relating to J.T. and B.S. under Counts 4–6 and Counts 8–9. McLaurin now appeals to this Court.

## III.

### Standard of Review

■ The standard of review pertaining to findings of fact in habeas corpus proceedings was set forth by this Court in syllabus point 1 of *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976): "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. pt. 1, *State ex rel. Wensell v. Trent,* 218 W.Va. 529, 625 S.E.2d 291 (2005); syl. pt. 1, *Moss v. Trent,* 216 W.Va. 192, 603 S.E.2d 656 (2004).

## IV.

### Discussion

■ First, appellant McLaurin contends that the Circuit Court should have granted him relief in habeas corpus because the trial court violated his right to due process in denying his motion to continue in order to obtain a psychiatric evaluation concerning his

competency to stand trial. Moreover, McLaurin asserts that the Circuit Court failed to address the competency issue in its July 11, 2005, order.

The motion to continue, filed by defense counsel Steven Miller and Richard Earles on November 2, 1989, and supplemented later with a similar motion filed by McLaurin, *pro se,* was heard by the trial court on November 7, 1989, one week prior to the commencement of the trial. During the hearing, Miller indicated that, although McLaurin had previously refused counsel's advice to bring the issue of insanity into the proceedings and had, thus, refused to submit to court-ordered mental examinations, McLaurin now agreed to undergo a psychiatric evaluation. Moreover, Miller stated that he believed McLaurin to be incompetent and that such a conclusion was supported by a 1975 psychological evaluation completed while McLaurin was in prison upon previous convictions. The 1975 evaluation, which counsel indicated could be made available for consideration, suggested that McLaurin suffers from difficulties "often associated with organic brain damage." [8]

The trial court denied the motion to continue. The trial court noted that orders had been entered in the case in September 1988 and in April, June and August 1989, allowing a psychiatric examination but that, each time, McLaurin failed to cooperate. In addition,

failure to return the victim without bodily harm increases a kidnaping defendant's maximum punishment from a term of years to a life sentence. Proof of the fact is therefore legally essential to the maximum punishment of a life sentence."

**8.** The psychological evaluation, dated October 8, 1975, stated in relevant part:

The subject's performance on the Revised Beta Examination suggests an I.Q. of 91, which is within the range of average intelligence. The Bender Visual Motor Gestalt test reveals perceptual difficulties which are often associated with organic brain damage. If this is the case, the use of any form of intoxicant could result in very erratic behavior. Personality testing indicates an individual with probable severe emotional difficulties. It is likely that the subject experiences occasional psychotic episodes during which time he suffers feelings of paranoia and unreality. During

such periods the subject is capable of grossly misinterpreting the actions of those around him.

Nevertheless, a follow-up psychological evaluation of McLaurin, dated November 20, 1987, stated: "Basically, the overall profile appears much better than in previous testing in 1975. No gross psychopathology appears present as in previous testing."

Significantly, the underlying indictment against McLaurin was returned by the grand jury on April 10, 1989. The transcript of the omnibus habeas corpus hearing in this proceeding suggests that defense counsel may have sought to obtain McLaurin's mental health records from prison as early as April 17, 1989 and received them in July 1989. In any event, neither the 1975 nor the 1987 psychological evaluations were presented and admitted in evidence during the hearing upon McLaurin's motion to continue the trial. Moreover, unlike the 1987 psychological evaluation, the 1975 evaluation, made a part of the record during the current habeas proceed-

the trial court concluded that McLaurin was articulate, aware of the nature of the proceedings and able to assist his counsel.[9]

■ In syllabus point 1 of *State v. Milam,* 159 W.Va. 691, 226 S.E.2d 433 (1976), this Court held:

> No person may be subjected to trial on a criminal charge when, by virtue of mental incapacity, the person is unable to consult with his attorney and to assist in the preparation of his defense with a reasonable degree of rational understanding of the nature and object of the proceedings against him.

Syl. pt. 2, *State v. Kent,* 213 W.Va. 535, 584 S.E.2d 169 (2003); syl. pt. 2, *State v. Sanders,* 209 W.Va. 367, 549 S.E.2d 40 (2001); syl., *State v. Jenkins,* 180 W.Va. 651, 379 S.E.2d 156 (1989). To determine the existence of such incapacity or incompetence, mental examinations are commonly ordered in criminal cases. Pursuant to *W.Va.Code,* 27–6A–1(a) (1983), whenever a circuit court believes that a defendant in a felony case may be incompetent to stand trial, "it may at any stage of the proceedings after the return of an indictment or the issuance of a warrant or summons against the defendant, order an examination of such defendant to be conducted by one or more psychiatrists, or a psychiatrist and a psychologist[.]" In that regard, this Court has held that when a trial court is made aware of a possible problem with a defendant's competency, it is an abuse of discretion to deny a motion for a psychiatric evaluation. Syl. pt. 1, *State v. Watson,* 173 W.Va. 553, 318 S.E.2d 603 (1984); syl. pt. 4, *State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649 (1980).

In support of his requested habeas relief, appellant McLaurin relies upon *State ex rel. Webb v. McCarty,* 208 W.Va. 549, 542 S.E.2d 63 (2000), in which this Court granted a defendant, charged with third offense shoplifting, relief in prohibition because her court-ordered psychiatric evaluation had not been completed prior to the scheduled trial date. In *Webb,* the evaluation remained pending for a full year because of continuances and missed appointments. In prohibiting the trial until the completion of the evaluation, this Court stated: "The judge was correct when he made his initial determination that Ms. Webb should receive a mental examination pursuant to *W.Va.Code* § 27–6A–1. While we understand his natural frustration that the examination was not complete a full year after he ordered it, that delay alone is not reason to forego the examination." 208 W.Va. at 554, 542 S.E.2d at 68.[10]

Cited in the *Webb* opinion is *State v. Paynter,* 206 W.Va. 521, 526 S.E.2d 43 (1999), syllabus point 5 of which holds: "When a trial judge orders a competency examination under *W.Va.Code* § 27–6A–1(a) (1983) (Repl. Vol.1999), but the examination is not undertaken in the manner required by that statute, the court must grant a subsequent motion for a competency evaluation made by the defendant and order any such examinations as are necessary to comport with *W.Va.Code* § 27–6A–1(a)." In *Paynter,* defense counsel moved for a psychiatric examination pursuant to *W.Va.Code,* 27–6A–1(a) (1983), to determine the defendant's competency to stand trial. The examination, however, was conducted by a psychologist who concluded that the defendant was competent. When defense counsel raised the issue again on the

---

ing, is unsigned by the examiner or examiners, although it contains signature lines.

9. Appellant McLaurin was permitted to personally address the trial court during the November 7, 1989, hearing. He stated that his refusal to submit to the evaluations, rather than directly relating to the issue of competency, was based upon his disagreement with his counsel over whether to assert an insanity defense to the charges set forth in the indictment. According to McLaurin, until he changed his mind in November 1989, he believed that, pursuant to his observations of others even "more incompetent," the defense of insanity was not "a credible defense that you can put on in this country [.]"

Toward the end of the hearing, the following exchange occurred:

The Court: You convinced me of one thing. You're very articulate, and you know what's happening here.

The Defendant: Yes.

The Court: And I think you know the system real well.

The Defendant: I'm familiar.

10. Filed with the decision in *Webb* was a dissenting opinion which suggested that, by refusing to attend court-ordered mental examinations, criminal defendants could substantially delay, or avoid, going to trial. 208 W.Va. at 555, 542 S.E.2d at 69.

eve of trial, the circuit court declined to order further examinations. · Thereafter, the defendant was convicted of murder of the second degree. In *Paynter*, this Court held that the defendant was entitled to a new trial because the circuit court had not properly resolved the issue of the defendant's competency, especially since the defendant had only been examined by a psychologist, whereas *W.Va.Code*, 27–6A–1(a) (1983), plainly requires that the examination be conducted "by one or more psychiatrists, or a psychiatrist and a psychologist."

The circumstances herein lack the compelling quality which, in *Webb* and *Paynter*, resulted in the relief granted to the defendants. Here, as set forth above, the trial court entered orders on four separate occasions allowing a psychiatric examination. Each time, however, appellant McLaurin failed to cooperate, until he changed his mind in November 1989 and followed the advice of counsel shortly before the scheduled trial. As he indicated to the trial court during the hearing upon the motion to continue, his refusal to be examined was based, at least in part, upon his belief that the defense of insanity was not a credible defense. Moreover, neither the 1975 nor the 1987 psychological evaluations were presented and admitted in evidence during the hearing upon the motion to continue. In any event, the 1987 evaluation stated that McLaurin's "overall profile appears much better than in previous testing." In addition, McLaurin's assertion of incompetency is contradicted by his *pro se* filings before the trial court. On June 15, 1989, prior to his motion to continue, McLaurin filed a *pro se* motion to dismiss the indictment, raising a constitutional issue and citing West Virginia and federal case law. Not long after the hearing on the motion to continue, McLaurin filed a *pro se* motion to recuse the trial judge and a *pro se* motion to obtain copies of certain medical records relating to J.T.

Finally, although the Circuit Court in denying habeas relief did not set forth enumerated findings of fact and conclusions of law, it did address the issue of McLaurin's competency in its July 11, 2005, order. As the Circuit Court stated:

[McLaurin] seems to argue that, because of his psychiatric issues, he was unable to make an intelligent decision regarding [an insanity] defense. However, this argument is contradicted by his trial counsel's testimony. According to Mr. Earles, [McLaurin] articulated a clear reason for his desire to avoid the use of a psychiatric defense. While this decision may have been unwise, the fact that he understood the issue well enough to give his reasons for opposing it demonstrates his competence to make this decision for himself. When the trial was only days away, he changed his mind, but by that time, in light of the Court's earlier cooperation with the development of the defense, the trial court was not in error for refusing to continue the trial.[11]

For the above stated reasons, therefore, this Court is of the opinion that the Circuit Court did not commit error in denying relief in habeas corpus with regard to the trial court's refusal to continue appellant McLaurin's trial.[12]

■ Next, appellant McLaurin contends that the Circuit Court should have granted him relief in habeas corpus because the trial court violated his right to due process in denying his pre-trial motion to sever. The motion alleged that the incidents relating to C.C., J.T. and B.S. were unrelated and that, therefore, the trial court should sever the respective Counts for separate trials. According to McLaurin, the cumulative effect at trial of the joined Counts improperly reinforced an impression of guilt before the jury, especially as to the charges concerning C.C.

11. It should be noted that, although not relevant to the time-frame concerning McLaurin's competency to stand trial, the Circuit Court in the current proceeding permitted McLaurin to act as "co-counsel" and personally question witnesses during the omnibus habeas corpus hearing.

12. In *State v. Myers*, 167 W.Va. 663, 280 S.E.2d 299 (1981), this Court held that the Circuit Court of Cabell County did not commit error in refusing to require a mental examination where the accused initially refused to cooperate with the examining physician and there was nothing presented to the Circuit Court to suggest that the accused was mentally incompetent.

where the evidence of the State was weak. Moreover, McLaurin contends that the Circuit Court should have granted him habeas relief because the trial court's refusal to give his limiting instruction concerning the jury's consideration of the various charges denied him a fair trial.[13]

█ Rule 14(a) of the West Virginia Rules of Criminal Procedure provides, in part: "If it appears that a defendant or the State is prejudiced by a joinder of offenses in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of the counts or provide whatever relief justice requires." Syllabus point 3 of *State v. Hatfield*, 181 W.Va. 106, 380 S.E.2d 670 (1988), holds:

> Even where joinder or consolidation of offenses is proper under the West Virginia Rules of Criminal Procedure, the trial court may order separate trials pursuant to Rule 14(a) on the ground that such joinder or consolidation is prejudicial. The decision to grant a motion for severance pursuant to W.Va. R.Crim. P. 14(a) is a matter within the sound discretion of the trial court.

Syl. pt. 1, *State v. Milburn*, 204 W.Va. 203, 511 S.E.2d 828 (1998), *cert. denied*, 528 U.S. 832, 120 S.Ct. 88, 145 L.Ed.2d 75 (1999); syl. pt. 6, *State v. Penwell*, 199 W.Va. 111, 483 S.E.2d 240 (1996); syl., *State v. Ludwick*, 197 W.Va. 70, 475 S.E.2d 70 (1996).

Appellant McLaurin's assertion that the incidents involving C.C., J.T. and B.S. are unrelated is, at this point, deprived of significance by three prior adjudications to the contrary. First, in denying the motion to sever, the trial court concluded that the incidents were of a similar pattern and nature or part of a "common scheme or plan."[14] Second, in the separate habeas proceeding resulting in *State ex rel. McLaurin v. Trent, supra*, the Circuit Court in its final order stated in reference to B.S. that "the *modus operandi* shows that the perpetrator held a gun to [B.S.'s] head; he inquired whether [she] enjoyed sex; he inquired if she had children. This 'MO' is identical to other victims in this case." Finally, in the habeas proceeding presently under consideration, the Circuit Court, in its July 11, 2005, order, specifically found:

> Although there were some dissimilarities between the three sexual assaults, there were sufficient similarities and other factors connecting [McLaurin] to the crimes to constitute a common scheme, plan or design.

In this case, the three victims were all assaulted within less than a three week span of time. J.T. and B.S. were attacked within two days of one another. J.T. and C.C. were both in downtown Charleston when they were attacked. C.C. and B.S. were both kidnapped in parking lots when they attempted to get into their cars and were forced to drive to isolated spots, where the assaults occurred. In each case, the assailant attempted to prevent the victim from seeing his face. B.S. and C.C. were threatened with a gun, and J.T. threatened with a knife. The crimes all occurred within a short time after [McLaurin's] release from prison on an earlier rape conviction. All three identified their assailant as a black man. The assailant

---

13. The issues McLaurin raises concerning the motion to sever and the limiting instruction were included in his petition for a direct appeal which was refused by this Court in February 1991. However, as the syllabus in *Smith v. Hedrick*, 181 W.Va. 394, 382 S.E.2d 588 (1989), holds, in part: "This Court's rejection of a petition for appeal is not a decision on the merits precluding all future consideration of the issues raised therein [.]"

14. In so ruling, the trial court referred to Rule 8 of the West Virginia Rules of Criminal Procedure which states, in part:

    (a) *Joinder of offenses.*—(1) Permissive joinder.—Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offense charged, whether felonies or misdemeanors or both, are of the same or similar character.

    (2) Mandatory joinder.—If two or more offenses are known or should have been known by the exercise of due diligence to the attorney for the State at the time of the commencement of the prosecution and were committed within the same county having jurisdiction and venue of the offenses, all such offenses upon which the attorney for the State elects to proceed shall be prosecuted by separate counts in a single prosecution if they are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan [.]

made remarks to B.S. and C.C. which were nearly identical.

As mentioned above, the standard of review pertaining to findings of fact in habeas corpus proceedings was set forth by this Court in syllabus point 1 of *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975), *cert. denied*, 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976): "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. pt. 2, *State ex rel. Kidd v. Leverette*, 178 W.Va. 324, 359 S.E.2d 344 (1987).

A review of the record herein reveals that the above findings of the Circuit Court were amply supported by the evidence which included testimony elicited during the omnibus habeas corpus hearing and during the underlying trial. Accordingly, based upon the standards set forth in *Hatfield* and *Postelwaite*, this Court is of the opinion that the conclusion to join the incidents concerning C.C., J.T. and B.S. for trial was protected by "the parameters of sound discretion." *Parker v. Knowlton, Construction Company*, 158 W.Va. 314, 329, 210 S.E.2d 918, 927 (1975). Consequently, McLaurin was not entitled to relief in habeas corpus with regard to the denial of the motion to sever.

■ Nor did the trial court commit error in refusing to give McLaurin's limiting instruction. That instruction, Defendant's Instruction No. 8, stated:

> The Court instructs the jury that you are to make no presumption of the defendant's guilt of the offenses of kidnaping and sexual assault on [C.C.] or [J.T.] because of evidence offered in the case of [B.S.]. The evidence offered by the State in support of the offenses charged as to each such victim must separately prove such offenses against such victim beyond a reasonable doubt. If you find that the evidence offered to prove the offenses charged is insufficient to prove that John McLaurin was the perpetrator of the offenses against [J.T.] or [C.C.] you must find the accused not guilty of all six such Counts.

McLaurin asserts that the instruction was necessary to inform the jury that, in deciding his guilt or innocence as to each victim, the jury could not consider evidence relating to the other victims. In the current habeas proceeding, however, the Circuit Court concluded that the instruction was not a correct statement of the law and found no error on the part of the trial court in refusing it.

Although the Circuit Court did not elaborate as to why Defendant's Instruction No. 8 was not a correct statement of the law, the instruction is defective because it is drafted too narrowly to serve its intended purpose, i.e., it warns the jury solely upon the effect of the evidence concerning B.S. upon their deliberation with regard to C.C. and J.T. Moreover, not only did the trial court otherwise instruct the jury that guilt as to each Count was to be predicated upon proof beyond a reasonable doubt, the trial court gave Defendant's Instruction No. 14 which stated:

> The Court instructs the jury that even though circumstances may be such as to arouse a strong suspicion of the defendant's guilt of an offense, if those circumstances do not prove beyond a reasonable doubt the actual commission of the crime as charged, including each and every element thereof and the identity of the accused as the perpetrator you must find the defendant not guilty of such conduct.

In any event, the requirement of such limiting instructions and any duty on the part of the trial court to correct Defendant's Instruction No. 8 to the contrary, appellant McLaurin's contention concerning the instruction is unpersuasive in the context of this Court's opinion in *State ex rel. McLaurin v. Trent*, *supra*. In *McLaurin*, following the setting aside of the convictions relating to C.C., this Court upheld the Circuit Court's ruling that the convictions relating to J.T. and B.S. stood on their own merit, regardless of the joinder of the charges based upon common scheme or plan. Consequently, in view of the strength of the inculpatory evidence, as found in *McLaurin*, proposed Defendant's Instruction No. 8 becomes of diminished import. As the *McLaurin* opinion states:

While the [Circuit Court] indicated the same *modus operandi* appeared in all three cases, that evidence was not the basis for the Circuit Court upholding the convictions for Counts four through nine. Instead, witness identifications along with other compelling evidence proved the basis for sustaining the jury's verdicts of guilt with respect to these Counts.

203 W.Va. at 73, 506 S.E.2d at 328. In that regard, the July 11, 2005, order of the Circuit Court in the current proceeding observes: "B.S. was able to identify [McLaurin] as her assailant. Furthermore, two maids saw [McLaurin] near the time and at the motel where J.T. was sexually assaulted."

Thus, this Court is of the opinion that the Circuit Court committed no error in denying relief in habeas corpus with respect to Defendant's Instruction No. 8.

■ The next assignment of error in the denial of habeas relief concerns McLaurin's convictions of sexual assault in the first degree against J.T. As stated above, J.T. was working as a cleaning maid at the Holiday Inn Civic Center in Charleston when, alone in one of the rooms, she was suddenly attacked and sexually assaulted three times by an assailant brandishing what appeared to be an ice pick. Specifically, J.T. testified at trial that she was grabbed from behind in the bathroom and, following a struggle, ordered to get on the floor in the bedroom area. While on her hands and knees, the assailant sexually assaulted her with his fingers, asked her about her family and admonished her to "enjoy it." While still on her hands and knees, the assailant sexually penetrated her with his penis. Then, the assailant ordered J.T. to get on her back and told her to keep her eyes shut. He then sexually penetrated her again with his penis.[15] Thereafter, he told her to stand up whereupon he struck her twice in the face with his fist. The assailant then ordered J.T. to the floor again where he attempted to shove her under the bed before he left the scene. Counts 4 and 5 of the indictment charged McLaurin with sexually assaulting J.T. by sexual intercourse, and Count 6 charged him with sexually assaulting J.T. with his fingers.

Appellant McLaurin contends that his conviction under Count 5 of the indictment, alleging the second act of sexual intercourse, violated his protection against double jeopardy. Specifically, McLaurin asserts that, because there was practically no elapsed time between the acts of sexual intercourse alleged in Counts 4 and 5, his conviction under Count 5 resulted in a multiple punishment for the same offense.[16] However, as reflected in its July 11, 2005, order, the Circuit Court found McLaurin's assertion to be without merit.

■ In so ruling, the Circuit Court relied upon *State v. Woodall*, 182 W.Va. 15, 385 S.E.2d 253 (1989), syllabus point 7 of which holds: "The defendant's double jeopardy rights are not violated by convictions of separate counts of sexual assault, based on repeated violations of the victim within a relatively short period, when there is conclusive evidence of elapsed time between separate violations." *State v. Lola Mae C.*, 185 W.Va. 452, 456, 408 S.E.2d 31, 35 (1991). In *Woodall*, a woman was abducted in a parking lot, driven off in her own car by the assailant and suffered numerous sexual offenses committed against her, including multiple rapes, until released forty-five minutes later. The following month, another woman was similarly abducted and suffered numerous sexual offenses committed against her, including multiple rapes, until released approximately one hour later. In rejecting the appellant's double jeopardy claim following his convictions and sentencing for those acts, this Court stated, in *Woodall*, as follows: "The victims' testimony made a sufficient showing of elapsed time between the separate acts, and we find no error in allowing the several

15. At trial, J.T. testified as follows:

Q. After he had you turn over there on the floor, I believe you described that he ordered you to keep your eyes shut?
A. Yeah.

Q. What did he do then after ordering you to turn over and keep your eyes shut?
A. He started having sex again.

16. This issue was also raised in McLaurin's direct appeal to this Court.

counts to go to the jury." 182 W.Va. at 25, 385 S.E.2d at 263.[17]

Pursuant to *W.Va.Code*, 61–8B–1(7) (1986) (since amended), the phrase "sexual intercourse" is defined, in part, as "any act between persons not married to each other involving penetration, however slight, of the female sex organ by the male sex organ [.]" Here, J.T. testified that while she was on her hands and knees the assailant then ordered her on her back and told her to keep her eyes shut. At that time, according to the evidence of the State, the second sexual assault occurred, also involving penetration. In view of J.T.'s testimony, this Court agrees with the assertion of the State, in these circumstances, that "to the victim of a brutal rape, the time it takes to follow the perpetrator's order to change positions so that the rape can begin anew is surely 'elapsed time' within the meaning of *Woodall*." McLaurin's contention concerning the alleged double jeopardy violation is, therefore, unconvincing.

■ Equally unconvincing is appellant McLaurin's assertion that the failure of his trial counsel to present any mitigating circumstances on his behalf during the sentencing hearing constituted ineffective assistance of counsel. Although the Circuit Court, in its order of July 11, 2005, did not address that assertion directly, the Circuit Court concluded that McLaurin had not shown ineffective assistance of trial counsel with regard to voir dire, the issues surrounding the serology evidence, or the development of psychiatric and alibi defenses.

■ In syllabus points 5 and 6 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), this Court held:

5. In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

6. In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. pts. 3 and 4, *State ex rel. Quinones v. Rubenstein*, 218 W.Va. 388, 624 S.E.2d 825 (2005); syl.. pts. 1 and 2, *State ex rel. Edgell v. Painter*, 206 W.Va. 168, 522 S.E.2d 636 (1999).

At McLaurin's sentencing hearing, his trial counsel moved for a sixty day pre-sentencing study. The motion was denied. The hearing then proceeded with McLaurin speaking upon his own behalf prior to the formal imposition of sentence. His trial counsel remained silent. During the omnibus habeas corpus hearing in the current proceeding, Steven Miller, one of McLaurin's trial counsel, explained his silence by suggesting that nothing was presented because McLaurin was bitter about having been convicted and was threatening to have words with the judge. Moreover, Miller stated that he would have told the trial court that McLaurin had psychiatric problems, but he did not do so because McLaurin was fearful of being "branded as a looney" by the inmates at the penitentiary.

In view of Miller's testimony, and in view of the fact that McLaurin stood before the sentencing court convicted of nine felonies after having previously been released from the penitentiary following sentences for rape, robbery and felonious assault, this Court is of

---

17. In *Woodall*, a portion of the sexual offenses committed against the second victim were described as follows:

He took off the victim's clothes, climbed atop her and raped her. After a bit, he forced her to climb on top of him, maneuvering within the car, and raped her again. He turned the victim on her stomach and again raped her. He then flipped her over onto her back and again raped her.

182 W.Va. at 19, 385 S.E.2d at 257.

the opinion that the decision of trial counsel to forgo the attempt to mitigate McLaurin's sentence did not constitute ineffective assistance of counsel. In that regard, McLaurin has not made clear in this proceeding what mitigating circumstances trial counsel should have presented.

### V.

#### Conclusion

Upon all of the above, this Court finds no reason to disturb the rulings of the Circuit Court denying McLaurin relief in habeas corpus. Therefore, the order of the Circuit Court of Kanawha County, West Virginia, entered on July 11, 2005, is affirmed.[18]

Affirmed.

**18.** It should be noted that, in addition to the above matters raised in this appeal, the Circuit Court, in its July 11, 2005, order denied habeas relief with regard to additional issues, including the following: (1) whether the selection of the grand jury was discriminatory based upon race, (2) whether the trial judge was intoxicated during the proceedings, (3) whether McLaurin's assertions concerning serology were fully litigated, (4) whether the prosecuting attorney made improper remarks to the jury during closing argument, (5) whether it was error to show McLaurin's "mug shot" to the jury, (6) whether there was sufficient evidence for the jury to consider kidnaping charges and (7) whether the State improperly utilized a peremptory challenge to exclude a juror based upon race.